## GALBREATH v. METROPOLITAN TRUST CO. OF CALIFORNIA et al.
### No. 2616.

Circuit Court of Appeals, Tenth Circuit.
March 12, 1943.

McDougal & O'Dell, of Denver, Colo., for appellant.

Lee, Doud & Griffith, of Denver, for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

Appellant, Charles A. Galbreath, as receiver for The Union Deposit and Savings Company, appeals from an order of the District Court of Colorado sustaining a motion to dismiss his petition of intervention, and from the final judgment of the court in this case. It is the contention of appellant that the petition of intervention states a cause of action on which relief can be granted, hence the trial court erred in sustaining a motion to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

Generally, a motion to dismiss on the grounds that a petition does not state a claim on which relief can be granted, admits all facts well pleaded, and the legal question presented thereby is governed by the facts as pleaded. Eberle v. Sinclair Prairie Oil Company, D.C., 35 F.Supp. 296; Leimer v. State Mutual Life Assurance Company, 8 Cir., 108 F.2d 302, 305; Gallup v. Caldwell, 3 Cir., 120 F.2d 90; Cohen v. United States, 8 Cir., 129 F.2d 733; Continental Collieries, Inc., v. Shober,

3 Cir., 130 F.2d 631; Polk Company v. Glover, 305 U.S. 5, 9, 59 S.Ct. 15, 83 L.Ed. 6. It is also equally true that one who intervenes in a suit in equity thereby becomes a party to the suit, and is bound by all prior orders and adjudications of fact and law as though he had been a party from the commencement of the suit. Swift v. Black Panther Oil & Gas Company, 8 Cir., 244 F. 20; Commercial Electrical Supply Company v. Curtis, 8 Cir., 288 F. 657, certiorari denied 263 U.S. 709, 44 S.Ct. 36, 68 L.Ed. 518; Rector v. United States, 10 Cir., 20 F.2d 845, 859; Central Republic Bank & Trust Company v. Caldwell, 8 Cir., 58 F.2d 721; State of Kansas v. Occidental Life Insurance Company, 10 Cir., 95 F.2d 935; Godfrey L. Cabot, Inc., v. Binney & Smith Co., D.C., 46 F.Supp. 346; United States v. California Cooperative Canneries, 279 U.S. 553, 556, 49 S.Ct. 423, 73 L.Ed. 838. A proper understanding and consideration of the precise issue presented by the petition of intervention and the order of dismissal, requires a recurrence to the pleadings and proceedings which preceded its filing. In brief outline, they are as follows.

The Union Trust Company, herein called the Trust Company, the Union Deposit Company, herein called the Deposit Company, and the Union Deposit and Savings Company, herein called the Savings Company, were interlocking corporations, organized by P. H. Troutman, who acted as the president of each. The Deposit Company and the Trust Company were organized for the purpose of creating, issuing, and selling securities to the public in the form of installment trust certificates. On August 1, 1930, and January 1, 1931, respectively, the Deposit Company and the Metropolitan Trust Company, herein called Metropolitan, entered into what is known as an investment trust indenture, by the general terms of which the Metropolitan agreed to act as trustee for the purchasers and holders of certain investment trust certificates, which the Deposit Company proposed to create, issue and sell to the public. The agreement dated August 1, 1930, covered the issuance and sale of Union Trust Certificates, Series C, and the agreement of January 1, 1931, covered the issuance and sale of Union Trust Certificates, Series E, but the agreements and trust certificates are not materially different in form. The certificates were to be sold to the public by the Deposit Company for the sum of $800 each, payable in one

hundred and fifty equal monthly installments. The first eighteen installments in the amount of $96 were to be used to purchase what was known as a participating share in the investment plan. The remaining one hundred and thirty-two payments, aggregating the sum of $704, were to be applied to the full payment of the trust certificate, and were to be used by the Deposit Company as and when paid for the purchase of stock in certain specified companies, the earnings of which were to be used for the purpose of paying six or seven per cent preferred dividends on the trust certificates. Upon maturity of the trust certificates, one hundred and fifty months after date of purchase, the investment in the stock so purchased was to be liquidated and the entire purchase price of the certificate in the sum of $800 returned to the registered certificate holder, plus the six or seven per cent dividends provided to be paid on the investment in the specified stocks. In addition, the indenture and certificate provided that the excess earnings from the stock investments, above the six per cent preferred dividends, were to be equally divided between the Deposit Company and the certificate holders in proportion to the amount invested.

The purpose of the trust indenture with the Metropolitan was to designate the Metropolitan as a trustee for the certificate holders, and to insure the faithful performance of the conditions of the trust certificate. The trust indenture with the Metropolitan recited the issuance of the trust certificates and the terms thereof; it bound the Deposit Company to invest the installment payments in the stocks specified in the certificate within the calendar month after the receipt of the payment, and to deliver the same to the Metropolitan as trustee, to be held by it for the benefit of the certificate holders. The trust indenture further provided that upon the maturity of the trust certificates, the Metropolitan would proceed to liquidate the trust estate, consisting of the stock in the specified companies, return the certificate holders their original investment, plus the stipulated preferred dividends, and fifty per cent of the excess earnings on the stock investment. The remaining fifty per cent of the excess earnings was to be delivered to the Deposit Company, or its order, all in accordance with the terms and conditions of the trust certificates, Series C and E. The Trust Company guaranteed the faithful performance of the terms and conditions of the trust indenture by the Deposit Company, and the indenture was signed by the Deposit Company, the Trust Company, and the Metropolitan, and the parties entered upon its performance.

In October, 1934, the Metropolitan commenced this suit against the Deposit Company and the Trust Company, in which it pleaded the trust indenture in detail, and the issuance and sale by the Deposit Company of trust certificates covered thereby. It alleged that the Deposit Company had withheld stock investments in the sum of $11,973.34, which it had not delivered to the Metropolitan as trustee, and as required by the terms of the certificates and the indenture. It prayed for an accounting under the trust indenture, and that the Deposit Company be restrained from collecting or receiving any further monies on the purchase price of the certificates, or from disposing of any monies or securities held by it, belonging to the certificate holders. The Deposit Company and the Trust Company answered, denying any defalcations or breach of the trust indentures. Among other things, it was alleged that the Metropolitan had been removed as trustee and the Trust Company selected as successor trustee in accordance with the trust certificates and indentures, and that the Metropolitan had refused to perform the duties imposed upon it by the terms of the trust indentures, as a result of which each of the companies had been damaged in the sum of $15,000, for which each prayed judgment against the Metropolitan. Issues on the counterclaim were joined by reply of the Metropolitan, in which it was alleged that its purported removal was in fraud of the investors, and had been so adjudged by a court of competent jurisdiction in the State of California.

Before the trial of the issues raised by the pleadings, and on January 24, 1936, the parties entered into a settlement agreement, by the terms of which it was agreed that the Metropolitan would proceed to liquidate the trust estate consisting of the stock purchased by the proceeds derived from the sale of the certificates. Upon liquidation of the trust estate by the Metropolitan within six months from the date of the agreement, the Metropolitan was to pay the certificate holders the amount of the investment therein, plus the preferred dividends provided in the trust certificate, and fifty per cent of the excess earnings on the

stock investment. It was agreed that the trust company was the owner and holder of a substantial number of the outstanding trust certificates, and hence would be entitled to participate in the preferred dividends and excess earnings as such owner and holder. It was also represented that the Trust Company was the beneficial holder of a substantial number of outstanding trust certificates, as to which it was agreed the Trust Company would act as the liquidating agent, and would receive the liquidated proceeds from these shares as such liquidating agent. It was also recognized that the Deposit Company owed the Trust Estate the sum of $11,974.87, with interest in the sum of $1,053.20, and which the Trust Company agreed to have charged against any sums due it upon liquidation. It was further agreed that upon liquidation, and after computation of preferred dividends, the excess profits derived from the investments which, under the trust indenture were payable to the Deposit Company, would be paid to the Trust Company. The agreement did not provide for the payment of any sums to the Deposit Company. The agreement further provided that in the event any trust certificates were not surrendered to the trustee for payment within three years after the date of liquidation, all sums accruing to the unsurrendered trust certificates should be paid to, or upon the order of, the Trust Company and not to the Deposit Company as provided in the trust indentures. In other words, the Trust Company assumed the obligations of the Deposit Company under the trust indentures in accordance with its guaranty to the Metropolitan, and thereby became subrogated to the right of the Deposit Company to the proceeds of the liquidation which would otherwise accrue to the credit of the Deposit Company under the terms of the trust indentures. It was agreed that the Metropolitan should withhold from any sums accruing to the credit of the Trust Company from the liquidation of the estate, an amount sufficient to meet certain stipulated charges and fees, and for which the Trust Company agreed to be bound. The parties agreed to be forever bound by the liquidation agreement and estopped from denying the validity of the liquidation when accomplished in the manner provided therein. The Deposit Company and Trust Company agreed to hold the Metropolitan harmless by a satisfactory indemnity bond against any and all losses sustained by

reason of claims for damages by any beneficiary of the trust, growing out of the liquidation. The agreement was signed by P. H. Troutman as president of the Deposit Company and the Trust Company, and was submitted to and approved by the court on January 24, 1936. The court, however, retained jurisdiction pending complete liquidation in accordance with the agreement.

The record does not reflect any further pleadings or proceedings until February 13, 1942. On that date, the Deposit Company filed a "petition" in which it pleaded the trust indentures of August 1, 1930, and January 1, 1931, and the subsequent settlement agreement of January 24, 1936. It alleged that in the course of the liquidation under the liquidating agreement, the Metropolitan had delivered to the Trust Company all of the proceeds of the excess profits except $4,000, which it had retained pending final liquidation, and to insure the payment of income taxes, stamp taxes, and other costs incurred in the process of liquidation; that all sums realized as excess profits from the investments accruing to the credit of the Deposit Company under the terms of the trust indentures, but payable to the Trust Company under the liquidating agreement, had been paid by the Metropolitan to the Trust Company and by it duly credited on its books to the Deposit Company. That this sum now remaining in the possession of the Metropolitan rightfully belonged to the Deposit Company. It also alleged that certain trust certificates had not been surrendered to the trustee for payment within six years after date of the liquidation as provided in the agreement and the order of the court, and that under the trust indentures, the proceeds attributable to these unsurrendered certificates had become the property of the Deposit Company; that liquidation under the settlement agreement had been completed, hence it was entitled to the funds held by the Metropolitan. It was further alleged that on June 10, 1931, the Deposit Company had assigned to the Savings Company all of its right, title and interest in and to the trust certificates, and that by reason of the said assignment, the Savings Company was entitled to receive the balance of the $4,000, representing the Deposit Company's share of the excess profits and the accrued funds from the unsurrendered trust certificates. The petition prayed for an accounting and for the payment of all funds to the Savings

Company. Thus, for the first time the Savings Company for which the appellant is now receiver, appears in these proceedings as the assignee of the Deposit Company based upon an assignment antedating the settlement agreement, under which the assignor Deposit Company agreed to be bound.

The Metropolitan moved to dismiss the petition on the grounds that under the settlement agreement, dated January 24, 1936, the Deposit Company had agreed that all of the proceeds from its interest in the trust estate should be paid to the Trust Company. The motion to dismiss was sustained on March 3, 1942. Thereafter, and on March 14, 1942, P. H. Troutman, as the last known member of the Board of Directors, and as the surviving trustee of the Trust Company, the Deposit Company, and the Savings Company, and others, sought permission to intervene. The petition attached to his motion alleged substantially the same facts, and prayed for the same relief as the petition of the Deposit Company, which had heretofore been dismissed by the court. The motion for permission to intervene was by the court considered and denied on March 25, 1942. On May 4, 1942, the court granted the appellant, Charles A. Galbreath, as receiver for the Savings Company, permission to file the petition of intervention which is now under consideration. The petition of intervention alleged substantially the same facts and prayed for the same relief heretofore sought by the Deposit Company's petition and the Troutman petition, both of which had been denied. The appellant's petition of intervention, as did the prior petitions, sought the same funds held by the Metropolitan, as assignee of the Deposit Company. The Metropolitan filed a motion to dismiss on the grounds that the petition failed to state a claim on which relief could be granted, and that the alleged claim or right of action, if any, had accrued more than ten years before filing the petition, and was barred by laches. The motion to dismiss was sustained on May 11, 1942.

Meanwhile, on May 6, 1942, Jo E. Shaw, as successor trustee for the Trust Company under certain trust agreements with the Texas Oyster Development Corporation, was granted permission to intervene for the purpose of asserting his claim against the funds held by the Metropolitan in the total sum of $2,196.02. The claim arose by reason of certain investments with the Trust Company under certain trust agreements, whereby the Trust Company acted as its trustee, and as such trustee had invested the Texas Oyster Development Corporation's funds in the trust certificates, Series C and E, as a consequence of which it was entitled to the proceeds of the liquidation of the trust certificates for which the Trust Company had acted as the beneficial owner under the settlement agreement dated January 24, 1936.

On May 27, 1942, the court filed extensive findings of fact and conclusions of law, and its decree dismissing the cause in accordance with the settlement agreement. As we interpret the findings of the court, it found that in the process of liquidation, the Metropolitan had paid to the Trust Company fifty per cent of the excess earnings on all outstanding trust certificates, Series C and E, which by the terms of the trust certificates and the indenture would be payable to the Deposit Company, but which under the settlement agreement was to be paid to the Trust Company. The court further found that the Metropolitan had paid to the Trust Company the preferred dividends and fifty per cent of the excess earnings on all trust certificates, Series C, which were beneficially owned by the Trust Company, except $850 which it had reserved to cover the possible loss or liability of the Metropolitan under the liquidating agreement. It also found that the Metropolitan had paid to the Trust Company all of the preferred dividends and fifty per cent of the excess earnings on the trust certificates, Series E, which were beneficially owned by the Trust Company, except $2,550 which it had reserved from the preferred dividends and excess earnings to cover possible loss or liability of the Metropolitan as provided in the settlement agreement.

The court specifically found that no part of the sums thus reserved by the Metropolitan were attributable to the fifty per cent of the excess profits on trust certificates, Series C or E, which under the terms of the trust certificate and the indenture, were to be payable upon liquidation to the Deposit Company, but which were to be payable to the Trust Company under the settlement agreement. The court allowed the claim of the Texas Oyster Development Corporation in the total sum of $2,196.02, and ordered the same paid out

574

of the funds reserved by the Metropolitan from the proceeds of the liquidation of the trust certificates beneficially held by the Trust Company. The court also found, in accordance with the settlement agreement, that a number of the trust certificate holders had failed to surrender their certificates within the time prescribed in the agreement, and the orders of the court, thus creating a fund in the amount of $1,172.84, which under the terms of the trust certificate and indenture would be payable to the Deposit Company, but which under the settlement agreement was payable to the Trust Company; that since under the trust indenture the Trust Company had agreed to pay the cost of liquidation on maturity of trust certificates, Series C and E, the expense of liquidation was therefore chargeable solely against the Trust Company, and not against any funds which it held, or which were creditable to it as the beneficial holder of trust certificates. Accordingly, the court deducted the expense of liquidation incurred by the Metropolitan in the sum of $1,047.73, leaving a balance attributable to this fund in the amount of $125.11, which it ordered paid to the State Bank Commissioner as assets of the defunct Trust Company.

Although the appellant has appealed from the judgment of the court, based upon the foregoing findings and conclusions, he has not challenged their correctness. The settlement agreement dated January 24, 1936, to which the Deposit Company was a signatory, disposed of all matters in controversy; it provided how and in what manner all assets were to be distributed, and adjudged the relative rights of all the parties to the agreement, and the court's findings and conclusions are in accordance therewith. It did not by its terms provide that any sums derived from the liquidation should be paid to the Deposit Company by the Metropolitan under any circumstances or upon any contingency. The petition of intervention pleads the settlement agreement, and the pleader is bound by its full force and effect.

We conclude that the appellant, as assignee of the Deposit Company, has no justiciable interest in the fund, to which the petition of intervention is directed. Consequently, the motion to dismiss was properly sustained. It, therefore, becomes unnecessary to consider other questions presented by this appeal.

The judgment is affirmed.