**ZEPHYR AMERICAN CORPORATION v. BATES MFG. CO. et al.**

Civ. No. 23.

District Court, D. New Jersey.

March 29, 1945.

Wall, Haight, Carey & Hartpence, of Jersey City, N. J., and Darby & Darby, and Samuel E. Darby, Jr., all of New York City (Donald J. Overocker, of New York City, of counsel), for plaintiff.

Newton A. Burgess, of New York City, for defendants.

MEANEY, District Judge.

This is a declaratory judgment suit brought by Zephyr American Corporation (hereinafter called "Zephyr"), against the Bates Manufacturing Company (hereinafter called "Bates"), charging them with unfair competition and seeking damages therefor. This matter is before this court on remand from an opinion by the Circuit Court of Appeals. Zephyr American Corporation v. Bates Mfg. Co., 3 Cir., 128 F. 2d 380.

A brief history of the case and prior proceedings will be beneficial.

Bates is the manufacturer, among other things, of a list finding device manufactured under two patents, Drucker Patent Number 1,895,409 and Peter Patent Number 2,115,537. In the latter part of 1937 one, Pollock, conceived of what he believed to be a material improvement in the device and offered to sell his alleged improvement to Bates. After a series of interviews Bates declined Pollock's suggestions. Pollock thereupon determined to manufacture and market his own list finder, and to that end organized his own company, the Zephyr American Corporation. Zephyr thereafter entered into an agreement with the Autopoint Company, a subsidiary of the Bakelite Corporation, giving Autopoint the exclusive distributing rights of the Zephyr device.

An August 18, 1938, Bates brought suit in Illinois against Autopoint on the Drucker-Peter patents, charging an infringement. The suit against Autopoint was settled on September 29, 1938, without an adjudication. On the same date Bates sent out notices of infringement to the trade in general, warning that the Zephyr device was a direct infringement of the Bates patents and that anyone handling such infringing articles would be liable for profits and damages.

On October 4, 1938, Zephyr instituted this declaratory judgment proceeding charging unfair competition and seeking an injunction, an accounting and an adjudication with respect to the validity and infringement of the Peter and Drucker patents. On October 27, 1938, Bates answered and counterclaimed, charging Zephyr with infringement of the two patents by the Zephyr device known as the "Zephyr Autodex".

The District Court after a trial on the merits ruled the Peter and Drucker patents valid and infringed and awarded damages to the defendant. 43 F.Supp. 893. That court found also that there had been no unfair competition. From that judgment plaintiff appealed.

Subsequently, in October 1941, while the appeal was pending, Bates permitted a number of copies of the District Court opinion to be handed out at a convention of the National Stationers Association without further advising that an appeal had been taken.

On May 15, 1942, the Circuit Court reversed the findings of the court below as to the validity of the Peter and Drucker patents and remanded the case for further hearings of the alleged unfair competition charges in view of the finding of invalidity of the patents.

In addition, the Circuit Court stated that "as the jurisdiction of the case depends upon diversity of citizenship, the questions in the federal court, whether the defendants' conduct was tortious and, if so, to what extent it is answerable therefor in damages are to be determined by local law."

The issue in this case is therefore confined to charges of the alleged unfair competition.

■ To establish the charges Zephyr relies upon (1) the suit against Autopoint, (2) the distribution of notices of infringement and (3) the distribution of the printed copies of the opinion of the District Court in the initial proceedings in this matter. These acts, it is alleged, were done in bad faith with the intent to ruin Zephyr. The burden is on the plaintiff to show malicious motives and bad faith. Each of the above acts will be considered in the order above set forth.

■ First, as to the suit against Autopoint. That action was brought in the State of Illinois and, under the New Jersey principle with reference to conflict of laws, the right to recover for an alleged tort is governed by the law of the state in which the alleged tort is committed. Potter v. First National Bank, 107 N.J.Eq. 72, 151 A. 546.

■■ Under the law of Illinois, in order to establish a cause of action for unfair competition resulting from tortious conduct, it is not sufficient merely to show an intent to injure, for a person may injure another by a lawful act and intend to do so. The controlling feature is the malice which accompanies the intent to injure which is manifested by the doing of an unlawful act. As was stated by the Illinois Court in Meadowmoor Dairies v. Milk Wagon Drivers' Union, etc., 1939, 371 Ill. 377, 21 N.E.2d 308, 314: "An intent to do a wrongful harm and injury is unlawful, and if a wrongful act is done, to the detriment of the right of another, it is malicious; and an act maliciously done, with the intent and purpose of injurying another, is not lawful competition."

See also Doremus v. Hennessy, 176 Ill. 608, 52 N.E. 924, 54 N.E. 524, 43 L.R.A. 797, 802, 68 Am.St.Rep. 203. The gist of the action in Illinois is, therefore, the doing of a wrongful act with evil design.

■ Bates was, at the time of the institution of its suit against Autopoint, fully justified in its reliance upon the validity of the Peter and Drucker patents. The words of the court in Kryptok Co. v. Stead Lens Co., 8 Cir., 190 F. 767, 769, 39 L.R.A., N.S., 1, are apropros. In that case Kryptok Company sued the Stead Lens Company for an alleged infringement of patents. Pending a determination of that action, Kryptok Company brought suits against purchasers from the Stead Company. An order was entered enjoining the additional suits and Kryptok appealed from the order. In reversing the enjoining order the court stated: "There was no denial that the patents were issued and from their issue the legal presumption arose that they were valid. While infringement was denied, the legal right to sue and prosecute suits for infringement to a hearing must be admitted * * *. Kryptok Company therefore had the legal right to sue Haussman & Co. and every other purchaser and retailer from Stead Company of the infringing lenses * * *."

The fact that Bates chose to sue the dealers in the Zephyr device prior to any suit against the manufacturer does not affect its legal right to bring a suit against such dealer.

The court in Sherman, Clay & Co. v. Searchlight Horn Co., 9 Cir., 225 F. 497, 500, similarly held that: "* * * it must also be conceded that the owner (of the patent) has the lawful right to sue any dealer who is making merchandise of his patented articles. All dealers in such articles without license from the patentee are alike tort-feasors, and all are alike amenable to damages until the patentee is compensated for the damages sustained, and all may alike be enjoined from so dealing in such articles."

The institution of the action against Autopoint was not a wrongful act, and Bates was, moreover, acting with justification in its reliance upon the validity of its patents. Nor do I find on the evidence that there was an intent to do a wrongful harm and injury, or that Bates acted in bad faith. A possible resultant loss to Zephyr from the exercise of a legal right by Bates would not be basis for a presumption of malicious purpose on the part of Bates. There is not, therefore, evidence sufficient to establish unfair competitive practices insofar as the Autopoint action is concerned.

■ The plaintiffs next contend that the distribution by Bates of infringement notices constituted unfair competition. The notices were sent from the Bates' main office in New Jersey and the New Jersey law in that regard is applicable.

The nearest indication of the applicable New Jersey law is found in Andrew v. Deshler, 45 N.J.L. 167. In that case, an action for slander of title to certain letters patent, the alleged libel was a notice pub-

576

lished in several newspapers warning against the use of certain patents and that suits were already pending. In addition, the notice contained statements that in fact were false. The plaintiff was non-suited on the ground that there was no evidence of malice or want of probable cause sufficient to maintain the action. The Court of Errors and Appeals of New Jersey in reversing stated that all cases agree that there must be evidence of malice, express or implied. The real point on malice was held to be whether the defendant made the statement bona fide and under an honest impression of its truth or whether he made it maliciously with the purpose of slandering plaintiff's title. A want of good faith in New Jersey is essential.

The rule as to notices generally, as stated by the Circuit Court, is that "A notice warning the public or specific dealers or users of a suit for patent infringement is not actionable unless it appears that the notices were not given in good faith, or that they were entirely without foundation in the scope of the defendant's patent."

Malice in New Jersey has been recently described as "The intentional doing of a wrongful act without justification or excuse * * *. A 'wrongful act' * * * is any act which, in the ordinary course, will infringe upon the rights of another to his damage, except it be done in the exercise of an equal or superior right." Louis Kamm, Inc., v. Flink, 113 N.J.L. 582, 175 A. 62, 66; Stein v. Schmitz, 21 N.J.Misc. 218, 32 A.2d 844.

The giving of notices of infringement is provided for in the statutes as a prerequisite to recovery of damages for infringement. R.S. 4900, 35 U.S.C.A. § 49. Bates was fully within its rights in its reliance upon the validity of the Peter and Drucker patents and in taking steps to advise the public of its rights. The sending of notices of infringement to a manufacturer's customers in bad faith and without intention of bringing suit, but solely to injure the manufacturer's business, is an unfair competitive practice. The evidence here falls short of establishing such bad faith or intent to harass plaintiff's customers.

No averment has been made and no evidence found indicating that the statements contained in the notices were false in any respect. The contents of the notices are not vicious or virulent in form or design. Nor was there a long passage of time between the sending of the notices and an action instituted, albeit initially by Zephyr.

The notices were sent out in great volume, amounting in fact, to a circularization of the trade. Such fact might be indicative, and has been so held, of an intent to injure the manufacturer's business. Where, as here, however, the subject matter of the alleged infringement is produced in great volume and will normally be sold by the trade generally, and will not be limited to specified dealers to the exclusion of the remainder, such circularization, without more, will fall short of establishing the charge of bad faith.

The reasonable conclusion is that the defendant believed its patents valid and infringed and gave notice accordingly. In such case, the charge of bad faith and unfair competition cannot be sustained.

The plaintiff finally contends that the defendant Bates Company circulated printed copies of the District Court opinion in bad faith and with the intent solely to injure plaintiff's business.

It appears that during a stationers convention, at which time an appeal was pending from the District Court judgment, a Bates representative, upon a request for information regarding this infringement action, was instructed to hand out a copy of the District Court opinion. He was specifically instructed to indulge in no discussion of the matter. No copies were to be given except on request for information, and then only during the convention. Copies of the opinion were never mailed or circulated throughout the trade. It is noted that at the time the copies were given no mention was made that an appeal had been taken. It might well have been a fairer course to pursue to have further advised that an appeal had been taken. But this fact, in the light of all the circumstances, is not sufficient to spell out bad faith.

Accordingly, it is my conclusion that the plaintiff has failed to establish the requisite bad faith and malice to sustain their charges of unfair competition.