raised, and do not think the jury were in any way misled to the injury of the defendant.

The question of contributory negligence was fairly submitted to the jury, and no exceptions were taken to such submission, either as to its substance, or that there was no evidence to support a verdict for the plaintiff upon that question. The defendant's counsel merely requested the court to charge that if the deceased had the same knowledge of the danger that the defendant had then there could be no recovery. The court declined to vary its charge upon that point, and there was an exception. I think this refusal to charge, in view of what the court had already said to the jury on the question of contributory negligence, was proper.

My conclusion is that no error was committed in the trial, that the exceptions taken by defendant should be overruled, its motion for a new trial should be denied, and judgment ordered for plaintiff upon the verdict, with costs.

SPRING, J., concurs.

(68 App. Div. 95.)

### POTTER v. NEW YORK EVENING JOURNAL PUB. CO. et al.

(Supreme Court, Appellate Division, First Department. January 24, 1902.)

1. LIBEL—ACTION—PARTIES DEFENDANT—EVIDENCE.

In an action against the New York Evening Journal Company, the "Star Company," and W. R. Hearst for a libel published in the Journal, it was shown that one company was virtually controlled by the other; that the Journal was printed on the presses of the Star Company; and that the moneys of the Journal were deposited in the bank account of the Star Company, and checked out by Hearst, who was president of both companies. *Held*, that such evidence was sufficient to retain the case to the jury as against defendants Hearst and the Star Company.

2. SAME—CLERGYMAN—VIOLATION OF COMMANDMENT—UNFIT FOR OFFICE—LIBEL PER SE.

There being a controversy between a clergyman and a mission society and others as to the right to possession of certain of the church property, an action was brought to determine such rights. While the trial was in progress, a newspaper published an article headed in bold and heavy type: "Minister Curses in Court. 'You're a ———— ———— Skunk,' says the Rev. Mr. Potter to Lawyer Clinch,"—and then proceeded to describe a scene stated to have occurred in court "this afternoon," during the trial of such action, in which the minister said, "I'd like to punch that ———— ————," and stated that when recess was ordered he, in a towering rage, shouted, "I'd like to punch that damned skunk in the head!" *Held*, that such publication charges such clergyman with violation of the third commandment, rendering him unfit to occupy his office, and hence is libelous per se.

3. SAME—CONSTRUCTION OF ARTICLE—QUESTION FOR THE COURT.

Whether an alleged defamatory article concerning a clergyman would have a tendency to deprive him of his office, or exhibit him as unfit to continue therein, is a question, where it arises on a construction of the article itself, to be determined by the court.

4. CHRISTIAN MINISTER—RELATION TO PEOPLE—PERSONAL MORALITY—JUDICIAL NOTICE.

A court will take judicial notice of the relation in which a minister or priest of the Christian religion stands to the church with which he is connected and to the community in which he lives, so far as personal

morality and the fundamental principles upon which religion is based
are concerned.

**5. CLERGYMAN—LIBEL—EVIDENCE—CHARACTER.**

Where, in an action by a clergyman for libel, defendant was permitted
to show that charges seriously affecting plaintiff's moral character had
been made, and investigated by an advisory committee of other churches,
appointed for that purpose, and that a majority of such committee re-
ported that certain of the charges were true, it was not error to permit
plaintiff to show that his own church, which, under the laws of his
denomination, was the final arbiter, decided in his favor as to all the
charges.

**6. SAME—MALICE—EXEMPLARY DAMAGES—CHARGE.**

Where a newspaper, without any investigation to ascertain the truth,
published an account received by telephone from its reporter of a trial
in which a clergyman was interested, containing false and defamatory
statements as to his language and conduct, it was not error, in an action
for such libel, to refuse to charge that there was no evidence of actual
malice, and that exemplary or punitive damages could not be awarded.

**7. SAME—JUSTIFICATION—GOOD FAITH—CHARGE.**

Where, in an action for libel, defendant introduced testimony in sup-
port of its plea that the published statements were true, it was not
error to charge that, if the jury found such defense not sustained, they
could consider defendant's motives in setting up such defense, and, if
they concluded defendant did not act in good faith in claiming the
truth of the publication, this would afford ground for an increase of the
amount of exemplary damages, if they were awarded, the introduction
of testimony not being conclusive that the plea was made in good faith.

Appeal from trial term, New York county.

Action by Daniel C. Potter against the New York Evening Jour-
nal Publishing Company and others. From a judgment for plaintiff,
and from an order denying a new trial, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PAT-
TERSON, O'BRIEN, and LAUGHLIN, JJ.

Clarence J. Shearn, for appellants.

Benjamin Scharps, for respondent.

PATTERSON, J.  In this action, which was brought to recover
damages for an alleged libel, the plaintiff had a verdict, and from
the judgment entered thereon, and from an order denying a mo-
tion for a new trial, this appeal is taken.

There were originally five defendants, namely, the Morning Jour-
nal Association, the New York Evening Journal Publishing Com-
pany, the Star Company, William R. Hearst, and Charles M. Palmer.
Each of these defendants denied the publication of the alleged libel-
ous matter, thereby imposing upon the plaintiff the necessity of
proving the fact of such publication.  He was unsuccessful in mak-
ing that proof as affecting the Morning Journal Association and
Charles M. Palmer, and, in consequence, at the trial the complaint
was dismissed as to them.  It is urged on this appeal that the com-
plaint should also have been dismissed as to the Star Company and
as to the defendant Hearst, upon the ground that there was no
sufficient evidence to show that either of those parties published or
circulated a newspaper containing the alleged libel, and that there
was nothing to show that Mr. Hearst was an officer of the cor-
poration owning and publishing that newspaper.  It is sufficient

upon this point to say that an examination of the record discloses that there was enough to retain the case before the jury as to both those defendants. The relations existing between the Star Company and the New York Evening Journal Publishing Company were such as to show that the former company was virtually controlled by the latter, and the newspaper issued by the. Evening Journal Company was printed upon presses belonging to the Star Company. The defendant Hearst appears to have been president of the Star Company, and also president of the Evening Journal Company; and in the issue of the Evening Journal newspaper containing the alleged libel Mr. Hearst is referred to in the editorial column as follows: "The Evening Journal. W. R. Hearst, 162 Nassau Street, New York. Wednesday, June 2, 1897." It also appears that Mr. Hearst drew checks upon the bank account of the Star Company, in which account the moneys of the Evening Journal Publishing Company were deposited.

The matter complained of as libelous or defamatory was contained in an article published in the New York Evening Journal on June 2, 1897. The plaintiff was a clergyman of the Baptist denomination, and the minister of what was known as the "Tabernacle Baptist Church" in the city of New York. A dispute had arisen between the plaintiff and other persons concerning the right to the possession of certain church buildings of the congregation or society of which he was the pastor. Those difficulties culminated in an action or judicial proceeding brought by the plaintiff against the New York Baptist Mission Society and others in the district court in the Fourth judicial district of the city of New York, and that action came on for trial in that court in May, 1897, and was continued from time to time, and was on trial before the justice of that court on the 2d of June, 1897. On the afternoon of that day there appeared in the New York Evening Journal an article relating to the plaintiff, which article was headed in bold and heavy type with the following words: "Minister Curses in Court. 'You're a ―――― ―――― Skunk,' says the Rev. Dr. Potter to Lawyer Clinch." The article then proceeds to describe a scene stated to have occurred in the Fourth district court "this afternoon." A suit of the plaintiff against the Baptist Mission Society for the reinstatement of the plaintiff in the mission house was mentioned, and the article proceeded to charge further that the plaintiff said, "I'd like to punch that ―――― ――――;" that, when recess of the court was ordered, the plaintiff, in a towering rage, shouted, "I'd like to punch that damned skunk in the head!" The plaintiff alleges in his complaint that in and by the article complained of he was charged and accused of having used as an individual and as a duly-ordained minister of the gospel, in a public place, and in the hearing and presence of many persons, the language above quoted, which the appellants now contend is not actionable per se, because it was not spoken of the plaintiff in his ministerial or clerical capacity. The rule that words spoken or written of any person holding an office or engaged in a trade or profession, to be actionable in themselves, must "touch him in his office," is not to be questioned. Van Tassel v. Capron, 1 Denio, 250, 43 Am.

Dec. 667; Keene v. Association, 76 Hun, 488, 27 N. Y. Supp. 1045; Moore v. Francis, 121 N. Y. 199, 23 N. E. 1127, 8 L. R. A. 214, 18 Am. St. Rep. 810; Kinney v. Nash, 3 N. Y. 177; Oakley v. Farrington, 1 Johns. Cas. 130, 1 Am. Dec. 107. But it is not to be implied from this rule that defamatory words charging a clergyman with vice or immorality are not actionable per se, unless such charges are made in connection with some act done or utterance made by him while in the performance of his professional or ministerial functions, as seems to be argued by the appellants here. Whatever may have been the reasoning of the court in applying the doctrine to those engaged in secular employments, defamatory words spoken of a clergyman were held actionable per se because they tended to deprive him of his benefice, to subject him to destitution from his office, or to present him as unfit to fill that office. Formerly, in England, the rule applied to clergymen seems to have been limited to those who were in orders in the established church; but such a rule, of course, cannot prevail in this country. The accepted doctrine is well stated in Newell, Defam. § 23, as follows:

"Words are often actionable, when spoken of clergymen, which would not be so if spoken of others. But it does not follow that all words which tend to bring a clergyman into disrepute, or which merely impute that he has done something wrong, are actionable without proof of special damage. The reason always assigned for this distinction between clergymen and others is that the charge, if true, would be ground of degradation or deprivation. The imputation must be such as, if true, would tend to prove him unfit to continue his calling, and therefore tend more or less directly to proceedings by the proper authorities to silence him."

Whether an alleged defamatory article concerning a clergyman would have a tendency to deprive him of his office, or exhibit him as a person unfit to continue his calling, is a question, where it arises upon a construction of the article itself, to be determined by the court upon the fair and ordinary meaning of the words used in the article; or, as in any other case of construction, it is for the court to say whether the words complained of are libelous per se. In this case there is no room for doubt. The court will take judicial notice of the relation in which a minister or priest of the Christian religion stands to the church with which he is connected and to the community in which he lives, so far as personal morality and the fundamental principles upon which religion is based are concerned. It requires no extrinsic proof of the disciplinary rules of any particular religious denomination to establish the fact that a minister of the gospel who breaks the ten commandments is unfit for his ministry, or is liable to degradation or deprivation of his ministerial office. What is remarked by Parker, C. J., in Chaddock v. Briggs, 13 Mass. 252, 7 Am. Dec. 137, is appropriate. That learned judge said that ministers of the gospel are teachers and exemplars of moral and Christian duty, and a pure and even unsuspected moral character is necessary to their usefulness in the community; and so essential is that character to the salutary administration of the ministerial office that even a reputation for immorality, although not supported by full proof, might, in some cases, be a sufficient ground for a removal. In the case at bar the article

published concerning the plaintiff makes express reference to his calling. Point and piquancy are given to the article by the headline, "Minister Curses in Court." It is the fact that he was a minister that is made the most prominent feature of the whole publication. What is intended to be shown to the public is the spectacle of a minister of the gospel, in a solemn judicial proceeding, using language, not perhaps, technically speaking, blasphemous, according to the strict etymology of that word, but which is a violation of the third commandment. We have no doubt that the article complained of was properly treated by the trial judge as libelous in itself.

Objections were taken at the trial to rulings of the court on matters of evidence, and those rulings require consideration. On cross-examination of the plaintiff he was asked many questions concerning his relations with women. The defendant was allowed to prove the fact that charges had been made against the plaintiff concerning such relations, and also concerning certain other accusations made against him of a very serious character, and which, if proved, would certainly have established that he was a grossly immoral, dishonest, and unworthy person. It appeared in proof that each individual church society of the Baptist denomination is an independent society; that, according to the practice and usages of that denomination, an individual church may call a council of churches to consider as an advisory body matters submitted to it by the individual society or church organization convening the council, or at whose instance it is brought together. It was shown that the Tabernacle Baptist Church, in June, 1896, called such a council, and that the charges made against the plaintiff were submitted to it. A committee of 15 appears to have been appointed, a majority of which committee, after numerous hearings, made a report that certain of the charges brought against the plaintiff were sustained, that certain others were not proven, and that certain others were not disproved. The whole effect of this evidence was to show that the plaintiff had been condemned by this council as an unworthy minister, and an unfit person to exercise his calling. With this evidence in the case, the plaintiff undertook and was allowed to show, in substance, that, notwithstanding the condemnation contained in the findings of the council, his own church repudiated those findings, protested against them, and expressed its confidence in him. The evidence of the action and attitude of his own church was contained in certain documents, the admission of which in evidence was objected to, but they were allowed to come in under the defendants' exception. We see no good reason why the whole history of this investigation, if any of it were allowed to come in, should not have been put before the jury. There is proof to support the plaintiff's contention that the ultimate decision upon the merits of the accusation made against him, and which were before the council, rested with the Tabernacle Baptist Church, of which he was the pastor, and, if one step in the proceeding against him was admitted as evidence of condemnation, the final step establishing his innocence in the eyes of his congregation, as a mere matter of fairness, was also proper to be put before the jury.

It is urged by the appellants that the court erred in refusing to charge the jury that under no circumstances should exemplary or punitive damages be awarded in the case; and that it also erred in refusing to charge that there was not any evidence in the case of actual malice. We do not think it was error to refuse to charge either of these propositions. There was not in this case proof of any actual, personal ill will or malignant feeling on the part of any one connected with the publication towards this plaintiff; but the right to recover exemplary damages does not arise alone from the defamatory matter being published with a malignant intent, and for the express purpose of injuring the plaintiff. It is urged that the case of Krug v. Pitass, 162 N. Y. 154, 56 N. E. 526, 76 Am. St. Rep. 317, has proclaimed the rule of law to be in this state that punitive damages cannot be recovered in an action for libel for general malice, but only for such particular malice as existed when the libel was published, and which had some influence in causing its publication, from which the inference is drawn that it is absolutely essential that there must have been some personal ill will or actual wrongful motive inciting the publication. Although some of the language in the opinion of the court of appeals in the case cited may be regarded as laying down a very broad rule, yet we think it is evident that the court did not intend that such inferences as are here claimed should be drawn from that decision. The learned judge writing the opinion of the court says:

"Express malice consists in such a publication from ill will or some wrongful motive implying a willingness or intent to injure, in addition to the intent to do the wrongful act. It requires affirmative proof beyond the act of publication indicating ill feeling or such want of feeling as to impute bad motive."

In McMahon v. Publishing Co., 51 App. Div. 488, 64 N. Y. Supp. 713, we had occasion to consider the case of Krug v. Pitass, and we came to the conclusion that in that case it was not intended to lay down any different rule concerning punitive damages than that which had been established by a line of cases in the courts of this state to the effect that punitive damages may be awarded where there is no evidence of actual or express malice, in the sense above indicated, if the jury found that the article was published recklessly, carelessly, and wantonly, and in disregard of the rights of the citizen who would be affected by the article so published. In the case at bar there was evidence from which the jury were authorized to find that the article complained of by the plaintiff was recklessly and wantonly published. The whole article, as it appeared in the Evening Journal, was communicated through the telephone by a reporter during the recess of the court in which the proceeding was pending, was written out in the office of the newspaper, and was printed and circulated on the same afternoon. No attempt was made to verify the reporter's account, and the very precipitancy of the publication and the haste to spread the charge broadcast in the community is evidence of a wanton disregard of the reputation of the accused clergyman. Undue haste and a failure to make inquiry of the plaintiff or of any one else concerning the truth of matter

communicated to a newspaper before publication of such matter is made was regarded in Turton v. Recorder Co., 144 N. Y. 149, 38 N. E. 1009, as being sufficient to authorize a judge to state to the jury that the article was published wantonly, recklessly, and with an utter disregard as to whether it was true or false.

It is further urged as a ground for the reversal of this judgment that the court erred in charging the jury that they might take into consideration the motives which led the defendants to interpose the defense of justification as a basis for increasing the amount of exemplary damages. What the court said to the jury in this relation is as follows:

"There is another point which you should consider touching an award of exemplary damages, and this is that the defendants, by their answers, and by their evidence given at this trial, have claimed that the article was true. If they have proved the truth of the words published, that would end the case for the plaintiff, and your verdict would be in favor of the defendants, as I have charged you. But, if you find this defense has not been sustained, you may also consider the motives which led to the setting up of that defense; and, if you should conclude that the defendants did not act in good faith when thus claiming the truth of the publication, this would afford you ground for an increase of the amount of exemplary damages, if they are awarded."

The criticism made upon this charge of the trial justice is that it would have been correct if no evidence had been offered tending to sustain the defense of justification, but that, inasmuch as such evidence was offered, and as witnesses called by the defendants had testified that the language imputed to the plaintiff had actually been used by him, the damages could not be aggravated by pleading that defense, which they in good faith undertook to prove, although the jury discredited their witnesses. Our attention has been called to the cases of Willard v. Publishing Co., 52 App. Div. 448, 65 N. Y. Supp. 73; Distin v. Rose, 69 N. Y. 122; Klinck v. Colby, 46 N. Y. 427, 7 Am. Rep. 360,—which intimate if they do not decide that the failure to establish a defense such as justification is not of itself evidence of malice, and cannot be resorted to in enhancement of damages, even where the allegations made in justification are unproved; but that is said in those cases in connection with the further consideration that the justification is not set up in bad faith. In Cruikshank v. Gordon, 118 N. Y. 178, 23 N. E. 457, an instruction was given to the jury that, where certain matter pleaded in justification of an alleged libel was unproved, and they believed it to have been published maliciously, and without probable cause, they might consider its being pleaded in aggravation of damages. There the court said:

"The interposition of pleas in justification is authorized by law. Nevertheless, as we think we have shown, courts have quite uniformly held that, if they were interposed in bad faith, the jury might consider the fact on the question of damages."

In Marx v. Publishing Co., 134 N. Y. 561, 31 N. E. 918, it was held that, while a jury might not infer malice from the pleading in good faith and an honest endeavor to establish justification, the question of good faith was for the jury, and the court was justified

in refusing to hold as matter of law that the answer could not be considered to enhance damages. We understand the general rule to be, as charged by the court in this case, that the motives impelling a defendant to set up matter in justification which is not proved may be considered by the jury in aggravation of damages. It cannot be said in this case that the instruction was entirely foreign to any matter involved in it, and that, therefore, there was no ground upon which an inference of bad faith in the reiteration of the libelous matter by allegations of the answer could be raised. The record is not without some evidence from which the inference of bad faith might be drawn. The defendant, at the request of the plaintiff, had published a refutation of its article, and has set up that fact in the answer. The instruction of the court upon this subject contained a correct statement of the law, and there was enough before the jury to permit the particular instruction to be given. No request was made by the defendant to present any different or other phase of the matter than that contained in the instruction as given.

On the whole case we are of opinion that the damages were not excessive, and that the judgment and order appealed from should be affirmed, with costs. All concur.