JOHN H. NICHOLS et al., Appellants, *v.* ITEM PUBLISHERS, INC., Respondent.

Argued November 14, 1955; decided February 17, 1956.

*Melvel W. Snitow* and *Sydney Snitow* for appellants. I. The allegations of the complaint, which also states the publication complained of, must be treated as established facts and defendant, by making its motion, authorizes the court to accept its statements as true. (*Schwartz* v. *Heffernan,* 304 N. Y. 474; *Tracy* v. *Kline & Son,* 274 App. Div. 149.) II. If either cause of action is good, the complaint should not be dismissed. (*Advance Music Corp.* v. *American Tobacco Co.,* 296 N. Y. 79.) III. The statement by defendant in its publication to the effect that plaintiff John N. Nichols was not the pastor of plaintiff church, when, in fact, he was, is libelous per se. (*Neaton* v. *Lewis Apparel Stores,* 267 App. Div. 728; *Matarazzo* v. *Daily Gazette Co.,* 276 App. Div. 249, 302 N. Y. 552; *Balabanoff* v. *Hearst Cons. Publications,* 294 N. Y. 351; *Nih* v. *Bolman,* 307 N. Y. 725.) IV. The statements in defendant's publication certainly injured both plaintiffs in their highly specialized profession. (*Sanderson* v. *Caldwell,* 45 N. Y. 398; *Shakun* v. *Sadinoff,* 272 App. Div. 721; *Rager* v. *McCloskey,* 305 N. Y. 75; *Cassidy* v. *Gannett Co.,* 173 Misc. 634; *Smith* v. *Buffalo Times,* 124 Misc. 495, 214 App. Div. 759; *Mencher* v. *Chesley,* 297 N. Y. 94.) V. The publication of defendant being false for the purposes of this motion and being directed to the highly specialized profession of plaintiffs, the final determination of the effect of that publication is up to a jury and not up to the court. (*Cyran* v. *Finlay Straus, Inc.,* 302 N. Y. 486; *Katapodis* v. *Brooklyn Spectator,* 287 N. Y. 17.)

*Joseph Reeback* and *Richard Brill* for respondent. I. The publication does not charge that plaintiff Nichols falsely held himself out as the pastor of the church. II. The publication is not defamatory of plaintiff Nichols. (*Reporters' Assn.* v. *Sun Print. & Pub. Assn.,* 186 N. Y. 437; *Al Raschid* v. *News Syndicate Co.,* 265 N. Y. 1; *Rossiter* v. *New York Press Co.,* 141 App. Div. 339; *O'Connell* v. *Press Pub. Co.,* 214 N. Y. 352; *McNamara* v. *Goldan,* 194 N. Y. 315; *Crashley* v. *Press Pub. Co.,* 179 N. Y. 27; *Peeples* v. *State of New York,* 179 Misc. 272; *Potter* v. *New York Evening Journal Pub. Co.,* 68 App. Div. 95; *Remsen* v. *Bryant,* 36 App. Div. 240; *Quinn* v. *Sun Print. & Pub. Assn.,* 55 Misc. 572, 125 App. Div. 900; *Curtis* v. *Argus Co.,* 171 App. Div. 105.) III. There is no

ambiguity or uncertainty in the meaning of the publication and the question whether or not it is defamatory is, therefore, for the court. (*Sanderson* v. *Caldwell,* 45 N. Y. 398; *Morrison* v. *Smith,* 177 N. Y. 366; *Mencher* v. *Chesley,* 297 N. Y. 94; *Balabanoff* v. *Hearst Cons. Publications,* 294 N. Y. 351.) IV. The extrinsic facts pleaded by plaintiff Nichols do not avail him, for they do not establish any libel of him and are not accompanied by a plea of special damages. (*O'Connell* v. *Press Pub. Co.,* 214 N. Y. 352; *McNamara* v. *Goldan,* 194 N. Y. 315; *Crashley* v. *Press Pub. Co.,* 179 N. Y. 27; *Brodek* v. *Jones,* 212 App. Div. 247.) V. The publication is not libelous per se of plaintiff church and the second cause of action is, therefore, insufficient for failure to plead special damages. (*Demuth* v. *Griffin,* 253 App. Div. 399; *Thibaudeau* v. *City of Niagara Falls,* 237 App. Div. 424; *Walker Memorial Baptist Church* v. *Saunders,* 285 N. Y. 462.) VI. Certain allegations of the complaint should be stricken out in any event as irrelevant, unnecessary and prejudicial. (*Fiorello* v. *New York Prot. Episcopal City Mission Soc.,* 217 App. Div. 510.)

FULD, J. This appeal is concerned with the sufficiency of the complaint in a suit for libel. It alleges two causes of action, one on behalf of the Reverend John H. Nichols, assertedly pastor of the Mt. Zion Baptist Church of Port Chester, and a second on behalf of the church itself. Plaintiffs claim that both were defamed by a news item which appeared in the *Daily Item,* a Port Chester newspaper owned and operated by defendant. The article purported to report the outcome of certain court actions brought by Reverend Nichols, the church and another person " against 22 members of the congregation ". It mentioned, among other things, the jury's " dismissal " of " an action for $50,000 brought by the church corporation against the congregation, in which the church claimed it was prevented from holding services ", and of one brought by Reverend Nichols " claiming conspiracy to force him out as pastor ". The article, referring to him as the " former pastor," states that, "*In finding for the defendants, the jury also declared the Rev. Mr. Nichols was not pastor of the church* " and that he " was removed as pastor of the Church by the congregation in 1947. On Jan. 25, 1949, after a 36-day trial,

Judge George H. Taylor, Jr., found the removal proper, Mr. Young explained. *It was alleged that supporters of the Rev. Mr. Nichols held a meeting in March, 1949, in which they recalled him as pastor ' for life.' But the jury decided there had been no legal meeting, and that thus the pastor had not been recalled* '' (italics appear in complaint).

The complaint further recites that the article is false and defamatory in that the individual plaintiff is, and has been at all the times mentioned, the pastor of the church, and a copy of the minutes of the jury's verdict is annexed to demonstrate that it made no finding that he was not pastor or that the 1949 meeting which recalled him was not '' legal.'' The statement that the action was against '' 22 members of the congregation '' is also labeled false and defamatory, since the 22 defendants '' were not members of the congregation because they had failed to regularly worship and regularly contribute to the said church ''.

No special damages are alleged, it being claimed that the publication injured Nichols in his capacity as pastor, causing '' great damage to his good name, reputation and professional standing as a pastor and preacher in the community ''. As to the church, the complaint asserts that it was injured in its good name and reputation because the article '' took sides '' with the 22 defendants and '' had an unwholesome effect on the minds of its readers,'' causing the church '' to lose face in the eyes of its congregants with resulting loss in membership, worshippers and income ''. Each of the plaintiffs demands a judgment for $10,000 against defendant.

Defendant moved to dismiss the complaint for insufficiency. The court at Special Term denied the motion, but the Appellate Division reversed and granted dismissal upon the ground that it '' fails to allege words that are actionable per se, and no special damages are pleaded.'' Whether that decision was correct is the only question before us.

The general rule, we stated in *Mencher* v. *Chesley* (297 N. Y. 94, 100), is that '' A writing is defamatory — that is, actionable without allegation or proof of special damage — if it tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community, even though it may impute no moral

turpitude to him." And to that listing of the defamatory should be added a writing which tends to disparage a person in the way of his office, profession or trade. (See, e.g., *Nih* v. *Bolman,* 307 N. Y. 725; *Rager* v. *McCloskey,* 305 N. Y. 75, 79; *Kleeberg* v. *Sipser,* 265 N. Y. 87; *Sanderson* v. *Caldwell,* 45 N. Y. 398, 405; *Potter* v. *New York Evening Journal Pub. Co.,* 68 App. Div. 95, 99.) The publisher of a libel may not, of course, escape liability by veiling a calumny under artful or ambiguous phrases and, if any common-sense construction of what was written justifies or supports a defamatory meaning, it will be for the jury, not the court on motion, to decide whether the writing was or was not defamatory. (See *Mencher* v. *Chesley, supra,* 297 N. Y. 94, 102.) However, on the basis of any reasonable reading of the publication before us, it is impossible to conclude that it says or implies anything that could subject either of the plaintiffs to contempt or aversion, induce any unsavory opinion of them or reflect adversely upon plaintiff Nichols' work or upon him as pastor of the church or as cleric generally.

That the Reverend Nichols was, in fact, pastor, contrary to the article's report, only demonstrates its falsity, not its defamatory character. Other than this, it declares only that he was removed in 1947, and that a meeting in 1949 which voted his recall was deemed illegal by a jury, so that, as a result of a court decision, he is no longer pastor of the church. Nothing in the article reflects in any way on his personal or professional integrity or ability. It assigns no reason for his removal or for the opposition to him by the 22 defendants, such as incompetency, misconduct or any other behavior that could be said to disparage him personally or in his profession as a clergyman.

The mere fact of one's removal from office carries no imputation of dishonesty or lack of professional capacity. (Cf. *Thompson* v. *Hamilton,* 229 N. Y. 591; *Rossiter* v. *New York Press Co.,* 141 App. Div. 339, 344.) It is only when the publication contains an insinuation that the dismissal was for some misconduct that it becomes defamatory. (See *Rossiter* v. *New York Press Co., supra,* 141 App. Div. 339, 344; *Ramsdell* v. *Pennsylvania R. R. Co.,* 79 N. J. L. 379.) The rule is no different for a clergyman, exalted and sensitive though

his post may be. A charge against him, to be actionable, must still "be such as, if true, would tend to prove him unfit to continue his calling" (*Potter* v. *New York Evening Journal Pub. Co., supra,* 68 App. Div. 95, 99), such as, for example, that he used foul language in a courtroom (see *Potter* v. *New York Evening Journal Pub. Co., supra,* 68 App. Div. 95) or that he "juggled" moneys taken on the collection plate. (See *Curtis* v. *Argus Co.,* 171 App. Div. 105.) The suggestion that the article *may* provoke "Idle, unfounded and baseless rumors" that plaintiff is "anything from 'thief' to 'imposter'" (opinion of CONWAY, Ch. J., p. 603), resting as it does entirely on sheer speculation, furnishes no basis for holding the writing defamatory.

Nor does the church stand in any better position, with reference to the sufficiency of the complaint, than does the individual plaintiff. The only mention of the church itself is the report that its claim against the 22 defendants for preventing it from holding services was dismissed. At its worst, the article conveys to the reader that there is a controversy over control of the church, with 22 insurgent members — or ex-members — challenging, particularly, Reverend Nichols' claim to the pastorate.

The language is unambiguous. Under no reasonable construction may it be read or regarded as defamatory of either of the plaintiffs. And, quite apart from other considerations, since no "actual temporal damage" is alleged, the complaint may not be upheld on any prima facie tort or intentional falsehood theory. (*Rager* v. *McCloskey, supra,* 305 N. Y. 75, 80–81.) Accordingly, the complaint was properly dismissed by the Appellate Division.

The judgment appealed from should be affirmed, with costs.

CONWAY, Ch. J. (dissenting). We are in agreement with the principles of law stated in the opinion of the majority of this court. Our disagreement lies with the application of those principles to the allegations of the complaint before us. The majority is of the opinion that "it is impossible to conclude that it [the publication here involved] says or implies anything that could subject either of the plaintiffs to contempt or aversion, induce any unsavory opinion of them or reflect adversely

upon plaintiff Nichols' work or upon him as pastor of the church or as cleric generally." We are of the opinion, on the other hand, that, in view of the peculiarly sensitive position of a clergyman, it may not be said, as a matter of law, that the publication was nondefamatory, that is, in our judgment it would not be unreasonable for a jury to conclude that the publication, which suggests that plaintiff minister was officiating as a clergyman without the right to do so, and had not been recalled under the proper procedure of his denomination, tends to expose him to contempt or aversion in the minds of a substantial number of the community and tends to hold him up as one to be avoided and looked upon askance. We recently had before us *Katapodis* v. *Brooklyn Spectator* (287 N. Y. 17) where no special damages were alleged, but where an article was published by defendant's newspaper regarding the death of plaintiffs' infant son which said of the parents that they " are in dire financial straits " and they would have " to let their son go to his final rest in a pauper's grave ". We there said (p. 21): " We think it is not for us to say that the publication of such a piece of news did not hurt the plaintiffs by tending to deprive them of friendly association with a considerable number of respectable members of their community. We believe it is the right of the plaintiffs to have a jury say whether the false words did, in fact, so defame them." Similarly, we feel here that it should at least be left to a jury to determine whether the written words alleged in the complaint are, when viewed in their entirety, susceptible of a defamatory or innocent meaning.

We do not agree with the majority that Reverend Nichols could not be said to have been disparaged personally or in his profession as a clergyman merely because the article assigns no reason for his removal or for the opposition to him, such as incompetency or misconduct. An article may be all the more vicious by what it fails to say rather than by what it does say. The readers of the article are thus given freedom to speculate and guess as to why the Reverend Nichols had the difficulties he had as pastor. Idle, unfounded and baseless rumors and gossip may flourish and may multiply to such enormous proportions that the Reverend Nichols will be accused of anything from " thief " to " imposter ". We think that the Special Term Judge

put the question presented in proper focus when he said: "To say falsely and maliciously of a minister of a church, holding himself out as such to the community that he was not in fact, the minister and that a jury had so found and that his congregation had not 'recalled' him cannot be held as matter of law, in my opinion, not to diminish him and do him hurt in his profession. It would, at least, present a question of fact in such respect for a jury. * * * There is also a moral stigma attachable to a minister of religion who falsely holds himself out as being something which he is not or at least a jury might so find." So in the present case, the article, among other things, falsely stated that a jury found that he was not in fact the pastor of the church and that his congregation had not recalled him. To some readers, this may not necessarily be suggestive of dishonesty, incompetency or other improper conduct on the part of Reverend Nichols. To others, however, especially in view of the fact that he does belong to an extremely sensitive profession which is always subject to the public scrutiny, many evil and unfounded thoughts may be harbored and many rash conclusions will be drawn. Accordingly, we say again that, in our opinion, the article cannot be deemed nondefamatory as a matter of law, but that a jury should be permitted to decide whether the article can reasonably permit of a defamatory or innocent inference to the readers in the community.

We pass on now to consider the second cause of action. Here, the Mt. Zion Baptist Church of Port Chester alleged that, because of the article, it had suffered injury. To refer to the "22 members of the congregation" against whom suit had been brought by Reverend Nichols and by the church itself, could conceivably be deemed defamatory in view of the fact that they were not in fact members of such congregation, and it could reasonably tend to hold up the church to obloquy, ridicule and scorn. A jury could properly find that the import of the entire article generally, with respect to the church, had an unwholesome effect on the minds of the readers in the community, a great many of whom were congregants of the church. Further, because the words set forth in the publication which referred to the Reverend Nichols as the former pastor of the church were so interwoven with the words which were referable to the

church itself, we feel, for the same reasons set forth above, that, with respect to the church's cause of action, a jury should be permitted to decide whether the publication can reasonably permit of a defamatory or innocent meaning.

Accordingly, in our judgment, the complaint was improperly dismissed by the Appellate Division and the judgment appealed from should be reversed and the motion to dismiss the complaint denied.

DESMOND, VAN VOORHIS and BURKE, JJ., concur with FULD, J.; CONWAY, Ch. J., dissents in an opinion in which FROESSEL, J., concurs; DYE, J., taking no part.

Judgment affirmed.