■ VICTOR HAGGBLOM, Respondent, v. S. S. SILBERBLATT, INC., Appellant, et al., Defendants.— Defendant S. S. Silberblatt, Inc., appeals from a judgment in favor of the plaintiff for $2,609, entered in a libel action. Plaintiff had been employed by S. S. Silberblatt, Inc., the general contractor, as superintendent on the Capehart Housing Project at Plattsburgh Air Force Base from June, 1957, through April, 1958. Plaintiff claims that he was libeled in a letter dated April 23, 1958, written by S. S. Silberblatt, Inc., to the Contracting Officer, Base Procurement Office, Plattsburgh Air Force Base, which stated: "Due to reasons of health Mr. Victor Haggblom, who had been designated by us as Superintendent, has requested that he be retired from that position. Accordingly, we have granted that request." The complaint also alleged a cause of action for libel against Plattsburgh Publishing Co., Inc., for publishing an

article in its newspaper relating to plaintiff's retirement, and a cause of action against one Krulik, an employee of S. S. Silberblatt, Inc., alleging that he provided the information for the newspaper article. The jury returned a verdict of no cause of action against the newspaper and Krulik, and a verdict of $2,500 against S. S. Silberblatt, Inc., alone. It is fair to assume, as both briefs concede, that the verdict is based on the second cause of action which alleges the letter above mentioned. The complaint alleges no special damages, and it is conceded that unless the alleged defamatory matter is libelous per se the judgment cannot stand. To constitute libel per se the writing must tend to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community, or it must be a writing which tends to disparage a person in the way of his office, profession or trade. If the language is clear and capable of only one meaning it becomes a question of law for the court to determine. (*Tracy* v. *Newsday*, 5 N Y 2d 134; *Nichols* v. *Item Publishers*, 309 N. Y. 596.) It seems clear that the writing in the present case does not come within the first category above mentioned, and plaintiff is not contending that it does. The only question then, is whether the writing tends to disparage plaintiff in the way of his office, profession or trade. Upon any reasonable reading of the writing before us we are unable to conclude that it reflected adversely upon plaintiff's work. There is no proof in the record that it did. It does not in any way reflect upon plaintiff's personal or professional integrity or ability. It cannot be construed as charging or reflecting any misconduct or unfitness in plaintiff's trade. Any other construction would have to be strained and unrealistic. " It is only when the publication contains an insinuation that the dismissal was for some misconduct that it becomes defamatory." (*Nichols* v. *Item Publishers*, *supra*, p. 601.) Judgment reversed on the law and complaint dismissed, without costs. Bergan, P. J., Coon and Reynolds, JJ., concur; Gibson and Herlihy, JJ., dissent and vote to affirm, in the following memorandum: As the majority memorandum recognizes, words tending to disparage one in the way of his trade or calling are actionable per se. (*Nichols* v. *Item Publishers*, 309 N. Y. 596, 601.) It is not necessary that they impute moral obliquity or invite ridicule or contempt, for the injury is to livelihood and not to reputation; and thus the defamatory statement may charge such things as incapacity, incompetence, unfitness or other condition incompatible with the proper conduct of the business or calling. (Seelman, Law of Libel and Slander in New York, §§ 19, 21, subd. D; 3 Restatement, Torts, § 573; 33 Am. Jur., Libel and Slander, § 66.) That an accusation of "incompetency" or "lack of professional capacity" may fall within this category seems to be implied in the *Nichols* opinion (*supra*, p. 601) and neither these nor the other conditions above suggested appear far removed from the physical incapacity with which plaintiff was charged. In many occupations there would seem to be no effective difference between professional and physical incapacity. In the case of a pilot, for example, the impact upon the public mind or that of an employer or prospective employer would probably be the same whether it was said that he had failed a refresher course in navigation or had been unable, by reason of defective vision, to pass a physical examination. Indeed, a charge of mental derangement, though no more than a "misfortune" and conveying "no imputation upon the plaintiff's honesty, fidelity or general capacity", was held actionable in the case of a bank teller, as subjecting him to temporal loss and depriving him of advantages and opportunities "open to those who have both a sound mind and a sound body." (*Moore* v. *Francis*, 121 N. Y. 199, 206, 207.) It seems to us that in this case injury was properly found in the statement as to plaintiff's health and that the wrong was greatly compounded by

the averment that he — a superintendent of heavy construction — had himself requested that he be retired from his position for reasons of health. The word "retired", in context, seems to us to smack of finality rather than to suggest a respite because of temporary disability. Clearly, the writing charged that plaintiff himself recognized that he was unable to work at his calling, this surely indicating "incapacity", "unfitness" or even "incompetence", in any reasonably broad view of the recognized principle. It seems equally clear that a prospective employer having other job applicants available would be inclined to pass plaintiff by rather than to undertake an investigation into the truth of the report as to his request for retirement because of poor health. In the present business world, good health is prerequisite to most employments and a derogatory reference to one's condition of health or a statement that one has retired because of health is, in our view, actionable per se. The issue of health in our present society is of first importance, and, as a matter of general knowledge, one vital to the active and demanding work of a construction superintendent.