Joseph Liff, J.
In an action to recover damages for libel, the defendants Francis S. and Imogene M. Brewster separately move to dismiss the complaint on the ground that it fails to state a cause of action, or, in the alternative, for an order requiring the plaintiff to separately state and number each cause of action. The defendant Malcolm A. Vendig also moves to dismiss the complaint for alleged insufficiency, or, in the alternative, on the ground that the publication attributed to him by the complaint constitutes fair comment and criticism as a matter of law.
The plaintiff alleges that he is the founder and incorporator of Port Washington Yoters Association Inc., an organization which was created for a number of purposes which might be best expressed by saying that its objective is to foster and promote a more fully informed and aware electorate with respect to community issues. The complaint charges the defendants with having maliciously and collusively participated in a conspiracy to defame the plaintiff’s good name and reputation by publishing libelous matter concerning him, and sets forth in one count four alleged defamatory articles appearing in three newspapers on different dates. Three of the articles are letters which were written to the editors and reprinted *823 in the publications. Each of the moving parties is an author of at least one of the letters. Each letter consitutes a separate and distinct publication giving rise to an independent cause of action (Cook v. Conners, 215 N. Y. 175, 179) and the pleader has improperly commingled them in one count. (Roth v. Atex Prods., 35 Misc 2d 136, 138.) This defect may not stand.
The complaint is also defective in that the pleader has failed to give any particularization of facts to show the manner in which each defendant is responsible for the publication of the article written by others. The plaintiff, moreover, has offered no evidentiary proof, by Avay of affidavit, to indicate that the respective defendants can be connected to and charged with the writings not published by such defendant. The defect is not cured by the eonclusory charge of the existence of a conspiracy. The gist of the action is defamation and injury, not the conspiracy which is not actionable of itself, and may be proved only for the purpose of establishing the commission by each of the defendants of the underlying tort. (See 1 Seelman, Law of Libel and Slander [1964 ed.], par. 8, p. 6.) The absence of evidence showing Iioav each defendant contributed to publication of all four of the alleged libelous articles limits the responsibility of each of the moving parties to the letter he wrote. We may now consider whether the matter contained in each of the publications is defamatory.
The letter written by the defendant Imogene M. Brewster states in part: “The suit filed — by the Voters’ Association climaxes a year of harassment of our Board of Education — by Mr. De Meo ; a year of obstruction and negativeness seething with hate; — a year in which the general public has had foisted upon it thousands of words of misinformation,— ; a year in Avhich he (De Meo) has had more to say about education than Dr. James Conant, and every word of it speAving vindictiveness and more hate. * * *
“We have watched in stunned fascination Avhile malice and spleen poured out over Port Washington * * *. There is hate loose in our toAvn because in the educational circle he can find people Avho are more ready to listen and give him his hour on the stage than people in other local public institutions.”
The letter above referred to Avas signed by Imogene M. Brewster, but also bears the name and address of Mr. and Mrs. Francis S. Brewster. There is a second letter which appears to have been signed by the Brewsters. This letter, similar in context to the first, contains portions which read as follows:
‘ ‘ The time has come to stop the sly whispering and abstract hinting about the past of Charles DeMeo, president of the *824 Voters’ Association, and to begin a loud shout of protest about his current activities. * * *
‘1 There is a hate-monger loose in our town who has pushed into the limelight in school affairs because in the educational circle he can find people who are more ready to listen and give him his hour on the stage than people in other local public institutions. ’ ’
The complaint contains no allegation of special damage and therefore the question arises as to whether or not the labeling of the plaintiff as a hatemonger, and a spewer of malice, spleen, vindictiveness and hate is libelous per se. The basic rule is that a writing published of another which is false is defamatory — that is, actionable without proof of special damage if it tends to expose a person to hatred, contempt, scorn or aversion (Triggs v. Sun Print. & Pub. Assn., 179 N. Y. 144, 153); or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community (Brown v. Du Frey, 1 N Y 2d 190, 196; Nichols v. Item Publishers, 309 N. Y. 596, 600-601); or if it tends to cause him to be shunned or avoided, or deprived of the friendly association of a considerable number of respectable members of the community even though it may impute no moral turpitude to him. (Katapodis v. Brooklyn Spectator, 287 N. Y. 17, 20.)
The language of the publications charged to the moving parties in this case may be capable of an innocent construction. Yet, considered apart from the public activities in which they were made they might be capable of a construction that would make them libelous in that they would tend to cause others to shun or avoid a person of such odious disposition (Katapodis v. Brooklyn Spectator, supra) and in some cases it might be for the jury to determine in what sense they were used (Sanderson v. Caldwell, 45 N. Y. 398, 401), since the courts would not strain to interpret defamatory writings in their mildest and most inoffensive sense in order to hold them nonlibelous. (Mencher v. Chesley, 297 N. Y. 94, 99.)
However, the language employed by the defendants Brewster and with which the plaintiff charges them as having libeled him, may also be considered in the light of the fact that the plaintiff was the founder and incorporator of an organization which he intended to devote to public affairs and the statements made by the defendants Brewster were uttered in the course of the exposure of these affairs to the consideration of the voters. Thus, as to the statements made by the defendants Brewster we must consider whether or not they exceeded the *825 limits of fair comment. (Grower v. State of New York, 23 A D 2d 506; Julian v. American Business Consultants, 2 N Y 2d 1; Foley v. Press Pub. Co., 226 App. Div. 535.)
In New York Times Co. v. Sullivan (376 U. S. 254, 270), Mr. Justice Brennan, writing for the court, said: “ Thus we consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials. [Citing cases.] ” There the publication which was made was of a public official but the court noted (p. 281) that it could apply as well to candidates for public office. He also said (p. 269): “ that freedom of expression upon public questions is secured by the First Amendment * * * The constitutional safeguard, we have said, ‘ was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.’ Roth v. United States, 354 U. S. 476, 484.” The defendants here might be charged with an excessive zeal and perhaps with lacking in good taste and even with having adopted the use of methods equal to those which they deplored, and still “ it is a prized American privilege to speak one’s mind, although not always with perfect good taste, on all public institutions.” (Bridges v. California, 314 U. S. 252, 270.)
Our Court of Appeals in Julian v. American Business Consultants (supra, p. 9) quoted this language: “ ‘ So whenever a man calls public attention to his own grievances or those of his class, whether by letter in a newspaper, by speeches at public meetings, or by the publication of pamphlets, he must expect to have his assertions challenged, the existence of his grievances denied, and himself ridiculed and denounced. [Citing cases].’ (Newell on Slander and Libel [4th ed.], p. 545.) ” (See, also, Defamation of Public Officers and Candidates, 49 Col. L. Rev. 875.) In the Restatement of Torts (1938) (§ 606, Comment a), it is said: ‘ ‘ Typical facts which, as matters of public concern, may be commented upon under the rule stated in this Section are the public acts and qualifications of public officers and candidates for office (see § 607), the management of educational, charitable and religious institutions (see § 608), literary, artistic and scientific productions (see § 609), and the conduct of persons who, by special appeal or otherwise, have offered their conduct or product to the public for approval (see § 610).”
*826 The plaintiff here pleaded that the statements were made maliciously, and even fair comment is not protected where the malice of the defendant is alleged and proven. (Hoeppner v. Dunkirk Print. Co., 254 N. Y. 95; New York Times Co. v. Sullivan, supra, pp. 279-280.) Our Court of Appeals stated in Hoeppner v. Dunkirk Print. Co. (supra, p. 99): “Every one has a right to comment on matters of public interest and concern, provided he does so fairly and with an honest purpose. Such comments or criticisms are not libelous, however severe in their terms, unless they are written maliciously. * * * criticism fairly and honestly made is not libelous, however strong the terms of censure may be. [Citing cases.] ”
The defendants Brewster have not answered. Had they done so they might have urged the defense of fair comment though the fact that the controversy arose out of a matter of public interest appears from the complaint itself, and thus the issue is raised. (Hoeppner v. Dunkirk Print. Co., supra, p. 100.) They move to dismiss pursuant to CPLR 3211 and under subdivision (c) of that section this court might have considered the motion as one for summary judgment. For that purpose there would have had to have been submitted to the court evidence on which the court might have formulated a conclusion as to whether or not there was any likelihood that the plaintiff could establish his charge of malice. However, that evidence was not offered and therefore the motion must be determined on the complaint itself. Should the plaintiff be able to establish the malice which he alleges, he will have made out a cause of action. (Hoeppner v. Dunkirk Print. Co., supra, p. 106; Grower v. State of New York, supra, p. 507.)
The letter written by the defendant Vendig, however, does not fall within the same category and must be separately considered.
He wrote:
“He [De Meo] really does not care about any issue or any candidate. His sole interest is being in the public eye. As the notorious Boss Tweed once said, ‘ I don’t care what they say about me, as long as they talk about me. ’ * * *
“ The cure is quite simple. Laugh at him if you will but above all, ignore him. Then soon, like the fabled Arabs, he will fold his corporation and be gone. R. I. P.”
This writing is abusive and derogatory rather than defamatory. A fair reading of it does not, as the plaintiff claims, associate him with Boss Tweed. It merely ascribes to him the game love of publicity as Mr, Tweed allegedly possessed, and *827 attributes to him a greater concern for his self interest than the public interest. The concluding phrase “ R. I. P.” (Rest in Peace) lacks good taste, but vulgarity as such is not defamatory.
The complaint as to the defendant Yendig is dismissed without leave to replead. The alternative relief requested by the defendants Brewster is granted with leave to plaintiff to serve an amended pleading separately stating each cause of action, within 20 days after service of a copy of the order entered hereon. The motions made by the Brewsters are otherwise denied.