Michael J. **DOYLE,** Plaintiff,

v.

**VINTNERS INTERNATIONAL COMPANY, INC. and Paul M. Schlem, Defendants.**

No. CIV–90–1026T.

United States District Court, W.D. New York.

July 17, 1991.

Gerald L. Paley, Phillips, Lytle, Hitch-cock, Blaine & Huber, Rochester, N.Y., for plaintiff.

Kreag Donovan, Chadbourne & Parke, Rochester, N.Y., for defendants.

## DECISION AND ORDER

TELESCA, Chief Judge.

### INTRODUCTION

Plaintiff Michael J. Doyle filed this action on September 28, 1990, alleging that defendant Vintners International Company, Inc. (Vintners) failed to award him severance pay in violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* Plaintiff further al-leges, pursuant to the court's pendant jur-isdiction, that "the defendants Vintners and Schlem falsely and maliciously caused to be published in a conspicuous place in several newspapers and in at least one national trade publication, concerning the plaintiff in his profession, the following false, libelous and defamatory matter, to wit: (*see* Exhibits A, B, C, D, and E, an-nexed hereto and incorporated herein, as if fully set forth)." (Complaint, ¶ 45). Exhib-its A through E, attached to plaintiff's complaint, are copies of allegedly libelous articles concerning Vintners' removal of Doyle from his position as President of Taylor Wine Company, a division of Vint-ners. The complaint does not, however, identify any specific statements in those articles as libelous.

Defendants Vintners and Schlem now move this court for partial summary judg-ment on plaintiff's libel claim, arguing that the statements plaintiff attributes to them are not capable of defamatory meaning and, moreover, that the statements are sub-stantially true. For the reasons discussed below, defendants' motion for partial sum-mary judgment is granted.

### BACKGROUND

The plaintiff, Michael J. Doyle, joined the Taylor Wine Company (Taylor) as Vice President and General Counsel in 1976, when it was still a family-owned business. In 1977, Taylor was acquired by the Coca-Cola Company, and Doyle remained as Vice President and General Counsel to Taylor. He was promoted in 1980 to Executive Vice President and General Manager, and in 1981 he became President of Taylor.

In 1983, Taylor was acquired by Joseph E. Seagram & Sons, Inc. (Seagram). Doyle continued as President of Taylor under Seagram ownership. In 1987, Seagram sold Taylor, along with its other wine busi-nesses to Vintners and Doyle remained at Taylor, acquiring the title of Executive Vice President of Vintners' East Coast Op-erations. Although the parties dispute whether Doyle also retained his title as President of Taylor, it is undisputed that his function at Taylor under Vintners' own-

ership was essentially unchanged. Moreover, while Doyle's proper title is an area of factual dispute between the parties, it is immaterial to the resolution of plaintiff's libel claim.

In mid-November, 1989, defendant Paul Schlem, then the president of Vintners, informed Doyle that he was removing him from his position as president of Taylor. Doyle was replaced by Frank Jerant, Vintners' then–Executive Vice President for West Coast Operations. In his new position as Executive Vice President of Vintners, Jerant was responsible for running all of Vintners United States winery operations.

Vintners offered Doyle the position of Executive Vice President and General Counsel to Vintners. Schlem states that as General Counsel, Doyle would have managed the legal affairs of the entire company in an effort to reduce Vintners expenditures on outside counsel. (Schlem Aff., ¶ 11). His salary, benefits and bonus compensation would remain the same. (Jerant Aff., Exhibit 6). At the time the newspaper articles which are the subject of this libel action were printed, Doyle had not yet decided whether he would accept the new position and was engaged in negotiations with Vintners concerning the proposed change in his role at the company. (Jerant Aff., Exhibits 6–12).

These negotiations continued until December 28th, 1989. During that time both parties explored several options for Doyle, including the General Counsel position, part-time work as a governmental liaison, and immediate severance with severance pay. On December 27, 1989, Doyle indicated that he would be willing to reconsider Vintners original offer of the General Counsel position if the company would provide "written commitment that the position w[ould] indeed be an enhanced one [as promised] and to continue [his] compensation and benefits for at least a two–year period in the event [his] employment [was] terminated for any reason." (Jerant Aff., Exhibit 11). Schlem did not feel that the company could agree to a two year severance package, and accordingly, Doyle was asked to vacate his office. (Jerant Aff., Exhibit 12).

The articles at issue in this libel suit appeared in several newspapers, including the *Star Gazette*, the *Democrat & Chronicle*, the *Geneva Finger Lakes Times*, and *The Wine Investor*, a trade publication, in November and December, 1989. All of the articles report that Doyle had been relieved of his position as president of Taylor, and that he would "remain with the company as executive vice president and general counsel, with responsibility for government affairs." (Complaint, Exhibits A–E). Several of the articles go on to explain that Vintners was attempting to make its wineries more efficient through consolidation of its east and west coast operations under one individual. One of the articles quotes a Vintners official as saying that they "very much want Mike Doyle to remain with the company," and states that the official denied that Doyle's removal was the result of a falling out between him and Vintners' management. (Complaint, Exhibit A). Another of the articles reports that "Doyle's new position 'could be considered a promotion' but is basically a change in his role. Instead of running the Hammondsport winery, he will be legal counsel for the entire company." (Complaint, Exhibit B).

At the oral argument of defendants' motion, plaintiff's attorney focused upon the phrase "will remain at the company," which appears in all of the allegedly libelous articles. Essentially, plaintiff claims that use of the phrase "will remain with Vintners" is equivalent to reporting that Doyle had accepted a demotion, and further implies that by accepting the demotion, he was admitting that he was incompetent to head Taylor or any other winery. Doyle alleges that by conveying this information to various newspapers, the defendants intended "not only to remove plaintiff from the position of president, but to damage him in his profession, thereby reducing his ability to negotiate with or compete against defendants in the wine industry." (Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, at 1).

Defendants now move for summary judgment, claiming that neither the articles, nor any statements in them are libelous as a matter of law. Doyle opposes the motion, claiming that there are disputed material facts which preclude summary judgment. In the alternative, he argues that he needs more time to conduct discovery in order to successfully oppose the motion.

## DISCUSSION

### A. Libel *per se:*

■ Plaintiff alleges that the information attributed to the defendants in the newspaper articles attached to his complaint constitutes libel *per se*. Libel *per se* is a limited category of statements recognized under New York law which are considered injurious on their face and thus do not require the pleading and proof of special damages.[1] *Davis v. Ross*, 754 F.2d 80, 82 (2d Cir.1985).

Generally, a publication constitutes libel *per se* "if it tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number in the community, even though it may impute no moral turpitude to him." *Nichols v. Item Publishers*, 309 N.Y. 596, 600–01, 132 N.E.2d 860 (1956) (quoting *Mencher v. Chesley*, 297 N.Y. 94, 100, 75 N.E.2d 257 (1947)). When an individual alleges libel *per se* in connection with his business or professional reputation, the "allegedly offensive writing [must] charge the plaintiff, in effect, with being 'ignorant incompetent, [or] incapable in his calling' and thereby tend to injure him in that capacity." *Amelkin v. Commercial Trading Co.*, 23 A.D.2d 830, 831, 259 N.Y.S.2d 396 (1st Dept.1965) *aff'd* 17 N.Y.2d 500, 267 N.Y.S.2d 218, 214 N.E.2d 379 (1966); *Four Star Stage Lighting, Inc. v. Merrick*, 56 A.D.2d 767, 768, 392 N.Y.S.2d 297 (1st Dept.1977); *see also Nichols*, 309 N.Y. at 600–01, 132 N.E.2d 860 (writing which tends to disparage individual in his profession or trade constitutes libel *per se*).

Summary judgment in a libel action is appropriate where the court determines that the allegedly offending articles are not capable of defamatory meaning as a matter of law. *James v. Gannett Co.*, 40 N.Y.2d 415, 419, 386 N.Y.S.2d 871, 353 N.E.2d 834 (1976). In making that determination, the court will not strain to interpret allegedly defamatory works in their most inoffensive sense to hold them non-libelous. *November v. Time, Inc.*, 13 N.Y.2d 175, 178, 244 N.Y.S.2d 309, 194 N.E.2d 126 (1963). Nor will the court "strain to find a defamatory interpretation where none exists." *Cohn v. National Broadcasting Co.*, 50 N.Y.2d 885, 887, 430 N.Y.S.2d 265, 408 N.E.2d 672, *cert. denied*, 449 U.S. 1022, 101 S.Ct. 590, 66 L.Ed.2d 484 (1980).

Moreover, in determining whether a statement is capable of defamatory meaning, the court must examine it in the context of the entire article. *James*, 40 N.Y.2d at 418, 386 N.Y.S.2d 871, 353 N.E.2d 834. In other words, the court must read the offending article as a whole, instead of taking one word or phrase out of context. *Id.* Thus, summary judgment is appropriate in an action alleging libel *per se* when, giving the allegedly offending language a fair reading in the context of the whole article, the court determines that "the contested statements are [not] reasonably susceptible of a defamatory connotation." *Id.* at 419, 386 N.Y.S.2d 871, 353 N.E.2d 834; *Marks v. Elephant Walk, Inc.*, 156 A.D.2d 432, 433, 548 N.Y.S.2d 549 (2d Dept.1989).

Although in his complaint plaintiff apparently alleges that the entire contents of five articles are libelous, at oral argument he focused on the statements that he had "stepped down" from his position at Taylor and that he "would remain" with the company as Executive Vice President and General Counsel to Vintners. Specifically, Doyle claims that in reporting that he had voluntarily taken the position of general counsel with Vintners, defendants were imputing his acknowledgment that he was

---

1. Special damages are damages which actually flow from the act or omission at issue, but do not necessarily flow in every case and thus must be pleaded specially.

incompetent to run Taylor or any other wine company.

Ordinarily, notice that a person was removed from office carries no libelous imputation. *Nichols v. Item Publishers*, 309 N.Y. at 601, 132 N.E.2d 860. "The mere fact of one's removal from office carries no imputation of dishonesty or lack of professional capacity." *Amelkin*, 23 A.D.2d at 831, 259 N.Y.S.2d 396. It follows that if it is not libelous to publish the fact that an employee has been terminated, it is not libelous merely to publish that he has been reassigned to a less-prestigious position. Thus, even were this court to accept Doyle's assertion that the publishing the phrases "will remain" at the company and "stepped down" as president is equivalent to reporting that he was demoted, they still do not support a claim of libel *per se.*

Even assuming that these statements could, standing alone, be considered defamatory, they are not defamatory within the context of the article as a whole. *See James*, 40 N.Y.2d at 418, 386 N.Y.S.2d 871, 353 N.E.2d 834. The articles all give explanations for Doyle's reassignment:

Kennedy denied that the management changes resulted from a falling out between Doyle and the parent companies management.

"Not at all," he said. "We very much want Mike Doyle to remain with the company."

\* \* \* \* \* \*

Naming Jerant to supervise both the Hammondsport winery and one in Gonzalez, Calif., will help to standardize operations at both sites and make them more efficient, Kennedy said.

–*Star Gazette*, 11/18/89

(Complaint, Exhibit A).

The changes were part of a consolidation to improve Vintner's efficiency, Kennedy said.

\* \* \* \* \* \*

"What we had were two wineries operating semi-autonomously.... [U]nless they are under one person, it is difficult to get everyone to talk to each other," Kennedy said.

Doyle's new position, Kennedy said, "could be considered a promotion," but is basically a change in his role.

–Geneva *Finger Lakes Times,* 11/21/89

(Complaint, Exhibit B).

Doyle's presidency came to involve only production and administration. "We weren't making full use of his talents," Schlem sez. [sic] "We brought him up to corporate because we felt he could help us more here."

Schlem adds that he believes it was counter productive to separate the responsibility for West Coast and East Coast production. It should have been under one person from the very beginning, he sez. [sic] "That's the only sensible way to handle it."

–*The Wine Investor,* 12/4/89

(Complaint, Exhibit D). No reasonable reader looking at these articles could gather that Doyle's "remaining with the company" was equivalent to an admission that he was incompetent to run Taylor or any other winery. Indeed, speculation within the industry was not that Vintners was attempting to rid itself of an incompetent president, but that Vintners was reorganizing in order to sell Taylor, a profitable and healthy operation, to raise needed funds. (*E.g.,* Complaint, Exhibit D).

█ Finally, even if this Court had found the newspaper articles capable of defamatory meaning, they were, at the time of their publication, substantially true. Substantial truth is sufficient to defeat a libel action. *Fairley v. Peekskill Star Corp.*, 83 A.D.2d 294, 297, 445 N.Y.S.2d 156 (2d Dept. 1981). It is not necessary that every detail in an account be accurate. *Korkala v. W.W. Norton & Co.*, 618 F.Supp. 152, 155 (S.D.N.Y.1985). A statement is substantially true under New York State law if the published statement could have produced no worse an effect on the mind of a reader than the pleaded truth. *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298 (2d Cir. 1986) *cert. denied* 479 U.S. 1091, 107 S.Ct 1303, 94 L.Ed.2d 158 (1987) (citing *Fleckenstein v. Friedman*, 266 N.Y. 19, 23, 193 N.E. 537 (1934); *see also Masson v. New*

*Yorker Magazine, Inc.,* —— U.S. ——, ——, 111 S.Ct. 2419, 2433, 115 L.Ed.2d 447 (1991).

In this case, the actual truth—that Doyle had not yet accepted the general counsel position, but was in the process of negotiations, and would have taken it had Vintners agreed to the severance package he demanded—would have had no worse effect on the mind of the reader than the published statement that "he will remain with Vintners." Even were the court to accept Doyle's assertion that acceptance of the position was a demotion and an admission of incompetence, it would not produce a different effect in the mind of the reader whether the article implied that "Doyle has accepted this demotion" or that "Doyle has not yet accepted this demotion, but will accept it if Vintners provides a favorable severance package." In either case, a reader would conclude that Doyle was willing to agree to the demotion. Accordingly, the statement that Doyle "would remain" with the company as general counsel was substantially true as a matter of law, and as such is an absolute defense against the libel charge.

B.   Need for additional discovery:

 In the alternative, plaintiff argues that defendants' motion for summary judgment should be denied because he is entitled to conduct discovery in order to oppose defendants' motion. Specifically, plaintiff states that he needs to conduct discovery in order to address the issues of publication, intent and knowledge. Where, however, the court concludes that a statement is not reasonably susceptible of a defamatory meaning or is substantially true, falsity and intent are irrelevant. *See Marks,* 156 A.D.2d at 433, 548 N.Y.S.2d 549. Furthermore, defendant has admitted, for the purposes of this motion, that they made all of the statements attributed to them in the articles. Given that admission and this court's conclusion that the offending statements are not capable of defamatory meaning and moreover, are substantially true, further discovery would not assist plaintiff in defending against this motion.

## CONCLUSION

Plaintiff Doyle argues that the phrases "will remain with the company" and "stepped down as president of Taylor" constitute libel *per se.* Taken either on their own, or in the context of the entire article in which they appear, these statements are simply not reasonably capable of defamatory meaning under New York law. Accordingly, defendants' motion for summary judgment with regard to plaintiff Doyle's libel claim is granted and the third cause of action in plaintiff's complaint is dismissed.

ALL OF THE ABOVE IS SO ORDERED.