■ DOMINIC S. RINALDI, Respondent-Appellant, v HOLT, RINEHART &

WINSTON, INC., et al., Appellants, and VILLAGE VOICE, INC., Respondent.— Order, Supreme Court, New York County, entered on March 10, 1976, affirmed for the reasons stated by Gellinoff, J., at Special Term, without costs and without disbursements. Concur—Birns and Lane, JJ.; Lupiano, J., concurs in a memorandum; Murphy, J. P., and Silverman, J., dissent in part in separate memoranda, as follows: LUPIANO, J. (concurring). I would affirm the order appealed from for the reasons set forth in Special Term's cogent opinion. Our Court of Appeals has declared: "To grant summary judgment it must clearly appear that no material and triable issue of fact is presented *(Di Menna & Sons v City of New York,* 301 N. Y. 118). This drastic remedy should not be granted where there is any doubt as to the existence of such issues *(Braun v. Carey,* 280 App. Div. 1019), or where the issue is 'arguable' *(Barrett v. Jacobs,* 255 N. Y. 520, 522); 'issue-finding, rather than issue-determination, is the key to the procedure' *(Esteve v. Abad,* 271 App. Div. 725, 727)" *(Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395, 404). Further, it is well to note that "Without speculating on the apparent conflicting rationale of the post *New York Times* cases, this court recognizes that the exercise of the right of free speech and free press demands and even mandates the observance of the coequal duty not to abuse such right, but to utilize it with right reason and dignity. Vain lip service to 'duties' in a vacuous reality wherein 'rights' exist, sovereign and independent of any balancing moral or social factor, creates a semantical mockery of the very foundation of our laws and legal system." *(Bavarian Motor Works v Manchester,* 61 Misc 2d 309, 311). Murphy, J. (dissenting in part). Defendants Holt, Rinehart & Winston, Inc. (hereafter "Holt") and Newfield appeal, separately, from that portion of the order below which denied their respective motions for summary judgment dismissing the complaint as against them in the instant libel action. Plaintiff cross-appeals from so much of said order as granted the motion of defendant Village Voice, Inc., for similar relief. I would grant the relief requested by all three defendants. In 1972 Newfield authored and the Village Voice published a series of articles that may generally be described as unflattering to plaintiff, a Justice of the State Supreme Court. More particularly, the article adversely depicted the manner in which plaintiff discharged his judicial duties. Plaintiff, claiming an absence of proof of malice, took no immediate action. Subsequently, an advertising agency composed an advertisement for the Village Voice containing a summary of portions of the article, which was published in the *New York Times.* Plaintiff then instituted suit to recover for an invasion of his right of privacy and for defamation. This court affirmed the denial of summary judgment to the Village Voice and the agency. *(Rinaldi v Village Voice,* 47 AD2d 180, cert den 423 US 883.) In the fall of 1972 Holt, with Village Voice's acquiescence, entered into a contract with Newfield to publish a book entitled "Cruel and Unusual Justice" ("the book") consisting, *inter alia,* of reprints of the Newfield articles. Approximately one year later Justice Rinaldi was indicted on charges of perjury and obstruction of justice. He was subsequently acquitted and re-elected to the Supreme Court. The book was published in March, 1974, while the indictment was still pending. The instant action, alleging a single claim of libel against all three defendants and seeking compensatory and punitive damages in the sum of $5,000,-000, was commenced several months later. The essence of the complaint is not that any portion of the book was palpably false, but, rather, that certain allegedly material facts were omitted from otherwise accurate reports of plaintiff's conduct and disposition as a Judge generally; and his handling of three criminal cases in particular. For example, Newfield reported that

three defendants in one case were set free with only $250 fines each, whereas two of them received $500 fines; the maximum sentence which could have been imposed on another defendant was only 15 years and not 25 years, as reported; and, in the third case, the defendant was paroled on an attempted bribery charge and not on a narcotics charge as reviewed (although it appears that the bribery attempt arose out of the narcotics arrest). I find these inaccuracies, in the context of this case, to be minor and inconsequential. While it is true that Newfield editorialized and severely criticized plaintiff for, among other things, "let[ting] a heroin dealer go free", "being suspiciously lenient in felony narcotics cases," "putting people on the street who sell death for a profit" and being "incompetent and probably corrupt" the question before us is not whether these opinions are justified, but whether they are constitutionally protected. In my view, they are. The Supreme Court's landmark decision in *New York Times Co. v Sullivan* (376 US 254), made dramatic changes in the law of defamation involving public officials by placing on a plaintiff in that category the heavy burden of proving, with "convincing clarity," that the factual material in suit was substantially false and that it was published with knowledge of its falsity or with reckless disregard as to its truth. On the instant record, which includes all pretrial discovery and presumably the evidence which will be adduced at the trial, plaintiff has failed to meet either aspect of that burden. As above-noted, the submissions below sufficiently reveal that plaintiff failed to carry his constitutional burden of proof of material falsity of the published facts with "convincing clarity." Accordingly, and for that reason alone, the complaint must be dismissed. Special Term, however, found triable issues of fact, "regardless of the literal truth of the facts published," because, *inter alia,* "crucial facts have been omitted which may devitalize the published facts and render them impotent to prove the averments". But, even assuming a cause of action for libel-by-omission exists, the defenses of justification and fair comment, found still viable by Special Term, need no longer be established by defendants sued for defamation by public officials under *New York Times* and its progeny. "A rule compelling the critic of official conduct to guarantee the truth of all his factual assertions—and to do so on pain of libel judgments virtually unlimited in amount * * * is inconsistent with the First and Fourteenth Amendments." *(New York Times Co. v Sullivan, supra,* at p 279.) And if the published facts were true, certainly the editorial comments, judgments and opinions regarding plaintiff's fitness to serve as a member of the judiciary are absolutely privileged. *(Gertz v Robert Welch, Inc.,* 418 US 323; *Miami Herald Pub. Co. v Tornillo,* 418 US 241.) Finally, assuming *arguendo* that plaintiff established a defamatory falsehood, he must still establish malice because it is only on proof by the public official plaintiff that a defamatory falsehood was uttered with " 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not" that recovery in situations such as this are allowed. *(New York Times Co. v Sullivan, supra,* at p 280.) On this point, plaintiff relies on various facts which allegedly came to defendants' attention prior to publication of the book, consisting of the transcripts in the three criminal cases and letters and reports received from several attorneys and two Bar Associations, to raise a triable issue of fact. For plaintiff to succeed, under the circumstances of this case, he must come forward with "sufficient evidence to permit the conclusion that the defendant[s] in fact entertained serious doubts as to the truth of [this] publication." *(St. Amant v Thompson,* 390 US 727, 731.) Here, again, plaintiff has failed to present proof of malice with "convincing

clarity" to warrant denial of summary judgment in a First Amendment case. The test to be applied is subjective rather than objective, based on what the defendants knew or thought at the time of publication and not on what they should have known or thought. On the record before us there is no evidence that Holt acquired knowledge of specific instances of literal or factual errors prior to publication and thus no evidence on which to base the inference that said defendant had a "high degree of awareness of their probable falsity" *(Garrison v Louisiana,* 379 US 64, 74). Moreover, Ms. Wood, a senior editor of Holt who was solely responsible for the prepublication editing of the book and the only person at Holt who had any significant contact with the book and its author prior to publication, submitted an affidavit below stating the reasons for her subjective belief in the truth of the Newfield charges, later bolstered by plaintiff's indictment. A jury's rejection of her sworn, uncontradicted testimony to reach the conclusion that she, in fact, entertained serious doubts as to the truth of the publication would be necessarily overturned. Even as to Newfield, who had a greater awareness of the critical comments regarding his articles than did Holt, I find that plaintiff failed to come forward with sufficient evidence, under the *Times* rule as it has evolved and been refined, to raise a triable issue of fact regarding his subjective doubt as to the factual portions of the book at the time it was published. Before concluding, I deem it appropriate to comment (in light of our prior determination in a related case) that adherence to precedent would seemingly compel me to follow the decision in *Rinaldi v Village Voice* (47 AD2d 180, *supra).* However, the primary focus in that case was a commercial advertisement and plaintiff's claimed right of privacy under sections 50 and 51 of the Civil Rights Law. Additionally, this court reached the malice issue only after holding that "Freedom of the press has never been extended to commercial advertising matter *(Valentine v. Chrestensen,* 316 U S 52)." *(Rinaldi v Village Voice, supra,* p 182.) *Chrestensen* no longer represents the current law in this field. *(Virginia State Bd. of Pharmacy v Virginia Citizens Consumer Council,* 425 US 748.) In light of the foregoing, the order appealed from should be modified to the extent of granting the motions of the defendants-appellants for summary judgment and otherwise affirmed. Silverman, J. (dissenting). I agree with Judge Murphy's dissent. I add only that particularly with regard to the book publisher, it is important that publishers be free to publish books presenting one side of a public controversy (provided they do not contain defamatory statements of objective facts known to the publishers to be false) without fear of running the risk of libel suits, notwithstanding the fact that others dispute this side of the controversy and its factual basis and have even brought libel suits alleging falsity. Otherwise we run the risk that the filing of a libel suit may silence or at least "chill" discussion and publication of the opposite view. The basic point of *New York Times Co. v Sullivan* (376 US 254) is to liberate public discussion from most of the inhibitions that the former law of libel and libel suits had imposed. And similarly the one thing that should not be permitted to inhibit a book publisher is the pendency of another libel suit; nor should the publisher be put to the expense and hazard of studying that suit, its legal papers, depositions and proofs and attempting to determine—at its peril—who is telling the truth. [79 Misc 2d 57.]