■ MARY P. NICHOLS, Respondent, v VILLAGE VOICE, INC., et al., Appellants, et al., Defendant.—Order, Supreme Court, New York County, entered November 16, 1976, denying motion of defendants-appellants to dismiss the fourth and fifth causes in the complaint, affirmed. Respondent shall recover of appellants $60 costs and disbursements of this appeal. The two causes under attack make statements impugning plaintiff's professional ability as a journalist, reflect upon her professional integrity, as well as her mental stability, and also claim malice on the part of defendants. The pleading is therefore sufficient, as being "a writing which tends to disparage a person in the way of his office, profession or trade." *(Nichols v Item Publishers,* 309 NY 596, 601.) Concur—Lupiano, Birns and Markewich, JJ.; Kupferman, J. P., dissents in the following memorandum: The plaintiff, a former senior editor of the *Village Voice,* sues for libel based on statements attributed to defendants Jack Newfield and Pete Hamill and published in the *Villager,* a weekly newspaper. Hamill's statement is: "Nichols' pieces were often inaccurate, full of unguided missiles. The new Voice is a solid organ of Journalism." Newfield's statements are: "because she wasn't writing good stuff in the last few years and had developed serial obsessions on Scotto [former Cultural Affairs Commissioner Irving] Goldman and Common Cause." "Mary talks like a member of the Labor Committee. She has a paranoid conspiratorial idea that Rocky runs *The Voice.*" By her own contention in her verified complaint, plaintiff is a writer and investigative reporter of great professional distinction and acclaim, whose reputation has taken on

"added lustre" because of her many writings and activities so that in one of her causes of action (not here presently under attack) she alleges that the *Village Voice* traded on her good will in its advertising. She is clearly by her own subjective standard and by objective standards, a public figure. "When a public figure sues for defamation, the first amendment bars recovery unless the defamatory falsehoods were made with knowledge of falsity or with reckless disregard for the truth." *(Gertz v Robert Welch, Inc.,* 418 US 323, 342–343; *Curtis Pub. Co. v Butts,* 388 US 130, 162–165; *New York Times Co. v Sullivan,* 376 US 254, 279–280; *Hotchner v Castillo-Puche Doubleday,* 551 F2d 910.) The individual defendants to whom the remarks are attributed are also public figures being well-known reporters and columnists, and, it may be said, that the plaintiff and the defendants are not strangers to litigation developed in the course of their journalistic pursuits. (See *Matter of Nichols v Gamso,* 35 NY2d 35; *Rinaldi v Holt, Rinehart & Winston,* 53 AD2d 839.) It may seem strange that those who would postulate the unqualified First Amendment protection of the press "from the chilling inferences of defamation suits" (cf. Stream, Press Freedom and Libel Actions, NYLJ, Aug. 2, 1974, p 1, col 4) would complain of unjustified criticism, but the law does not play favorites. The investigative reporter must face the same standards as the professional belly dancer (see *James v Gannett Co.,* 40 NY2d 415) and the society matron (see *Moran v Hearst Corp.,* 40 NY2d 1071). The "first amendment may confer on the publisher of defamatory matter a limited privilege to be wrong". (Note, Corporate Defamation, 75 Col L Rev 963, 973.) With that in mind, I dissent and vote to reverse and dismiss the fourth and fifth causes of action. The remarks alleged are sheer matters of opinion (cf. *People v Blumenthal,* 55 AD2d 13) expressed by the plaintiff's professional contemporaries. Were the plaintiff merely a privat individual involved in a matter of public concern, to warrant a recovery it would have to be established "by a preponderance of the evidence, that the publisher acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." *(Chapadeau v Utica Observer-Dispatch,* 38 NY2d 196, 199.) Even by that standard, there would be grave doubt in the context of this case and the nature of the parties that the plaintiff was setting forth a cause of action, for the plaintiff and these defendants have themselves set the standards. Damage to reputation does not by itself create a cause of action. (Cf. *Paul v Davis,* 421 US 909.)