GUY J. VELELLA, Respondent, v MICHAEL R. BENEDETTO, Appellant.

First Department, December 29, 1981

**APPEARANCES OF COUNSEL**

*Alexander A. Delle Cese* for appellant.

*Gary S. Basso* of counsel *(Abraham Friedman,* deceased, by *Velella, Velella & Basso,* attorneys), for respondent.

**OPINION OF THE COURT**

SANDLER, J.

In the closing days of an election campaign for the New York State Assembly, defendant, a candidate for the seat held by plaintiff (and still held by him), distributed a campaign flyer that gave rise to this libel action. A detailed description of the contents and appearance of the flyer is important to an understanding of the issues raised on this appeal from Special Term's denial of defendant's motion for summary judgment dismissing the complaint.

At the top of the leaflet, prominently printed, appears the statement: "VELELLA TAKES MONEY FROM INDICTED LANDLORD." Immediately thereunder is reproduced a part

of a news story in the *New York Daily News* dated March 18, 1975, which physically covers almost half the space of the leaflet. The headline in the story reads: "18 Housing Firms Indicted, 7 Arrested In Repair Fakes." The following news story gives details of this event. Underlined in the flyer as one of those indicted is "Landlord Harry Lipshitz". Also underlined is the office address of his varied real estate corporations: "2111 Williamsbridge Road, Bronx".

Directly thereunder, in print somewhat larger than the news story, appears the words "Benedetto's opponent received $250 from Landlord Lipshitz who shares the same offices at 2111-2113 Williamsbridge Road with Velella!" This is followed by a reproduction of excerpts from the financial report of the Committee to Re-elect Assemblyman Guy J. Velella which, in quite legibly printed words, discloses the receipt of a $250 contribution on November 6, 1974 from one H. Lipshitz, whose address is listed as 2111 Williamsbridge Road.

Finally, at the bottom of the page, once again in prominent print, appear the words "Let's Restore Integrity To Government! Elect MICHAEL R. BENEDETTO For Assembly."

When the leaflet is examined in the light of the record on this motion for summary judgment, it becomes apparent that, with one limited exception, the factual statements set forth in it are accurate. The landlord in question had in fact made a $250 contribution to Mr. Velella's campaign. Although presented in what many will regard as a distasteful and unfair manner, the statement that "Velella Takes Money From Indicted Landlord" is true unless the untenable position were to be adopted that the statement was false because the money was contributed to Mr. Velella's campaign committee rather than to Mr. Velella directly.

Nor is there any substance in the claim that the leaflet falsely charged that the contribution was received from a landlord already indicted at the time it was made. The leaflet makes no such assertion. The possibility that some might interpret the words "indicted landlord" to mean that the landlord was indicted before the contribution was made

does not make an accurate statement false, particularly in light of the fact that the correct sequence of dates appears quite clearly in the leaflet. Similarly, the use of the word "takes," with the possible misleading implication of repetitive behavior, seems legally insignificant in view of the circumstance that, in a prominent and detailed part of the leaflet, the fact is clearly disclosed that only one campaign contribution was asserted.

The single factual inaccuracy in the flyer is the statement that the landlord "shares the same offices at 2111-2113 Williamsbridge Road with Velella." Piecing together the relevant statements in the affidavits submitted by both parties, it appears that this address is that of a small two-story office building in a residential district. The building contains only a few offices, and these are primarily devoted to the real estate business. One entrance leads to the ground floor offices occupied by the landlord. A second entrance leads to Mr. Velella's law offices on the second floor.

The issue presented by this single factual error is similar to that addressed by the Court of Appeals in *James v Gannett Co.* (40 NY2d 415, 420, 421). Although not free from doubt when considered in the light of traditional common-law principles, we are not persuaded that this single inaccurate statement is actionable when considered by itself, or that it so infects a leaflet otherwise essentially accurate in its factual statements as to make the leaflet as a whole actionable.

Any possible doubts on this issue are dispelled when the facts are considered in the light of the principles enunciated by the United States Supreme Court with regard to defamation actions by public officials. In *New York Times Co. v Sullivan* (376 US 254, 270) the court held that such actions by public officials must be considered "against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." The court held with regard to such actions by public officials that there must be established "with convincing clarity" (at pp 285-

286) that the defamatory falsehood was made with "'actual malice' — that is, with knowledge that it was false or with reckless disregard of whether it was false or not" (at p 280). (See, also, *Gertz v Robert Welch, Inc.,* 418 US 323, 342.)

Considering the flyer in the light of these principles, I think it clear, with regard to the single inaccuracy in it, that whether or not it would otherwise be actionable, the record does not disclose "sufficient evidentiary facts to generate a triable issue of fact" as to whether the statement was made "with knowledge that the statement was false or with reckless disregard of whether it was false or not." (See *Rinaldi v Holt, Rinehart & Winston,* 42 NY2d 369, 379, 382.)

Going beyond that limited issue, the dissenting opinion of LUPIANO, J., although persuasively argued, misconceives fundamentally the thrust of the Supreme Court decisions in this area, and adopts a standard that will inevitably impair significantly the primary values that the Supreme Court has sought to conserve. What is presented here is a campaign leaflet, all too typically unfair in its treatment of an opponent, which is essentially accurate in its factual statements, which might well not be actionable even if the statements were false, and as to which there is nothing in the record to establish that the single material inaccuracy was made with actual malice.

The order of the Supreme Court, Bronx County (BLOUSTEIN, J.), entered December 10, 1980, denying defendant's motion for summary judgment dismissing the complaint, should be reversed, on the law, the motion granted and the complaint dismissed, without costs and without disbursements.

KUPFERMAN, J.P. (dissenting). The majority opinion sets forth the facts but ignores the full defamatory innuendo and the context in which the leaflet appeared.

While it is clear that at one time plaintiff received a campaign contribution from a landlord, this was before the landlord was indicted. The headline of the leaflet did not say that the plaintiff "took" money, but rather "takes" money, indicating that it was a present situation.

The theory of the *New York Times Co. v Sullivan* case (376 US 254, 270) of having a debate on public issues "uninhibited, robust, and wide-open", presupposes an honest statement of views with the opportunity to reply. A distribution but two days before election day gives no such opportunity.

The denial of defendant's motion for summary judgment dismissing the complaint should be affirmed.

LUPIANO, J. (dissenting). In a campaign for an assembly seat, defendant circulated a flyer accusing his opponent, plaintiff herein, the incumbent, of taking a campaign contribution from an indicted landlord with whom plaintiff purportedly shared an office. Defendant points out that the *Daily News* article and the photostat of the receipt of the contribution, both set forth in the flyer, are, by their very nature, true. However, the flyer is to be "considered as a whole, that its meaning depends, not upon isolated and detached statements, but upon '"the whole scope and apparent object of the writer".' *** The writing must be 'read against the background of its issuance, under the circumstances of its publication' *** and construed, not with the high degree of precision expected of and used by lawyers and judges, but as it would be read and understood by an ordinary member of the public to whom it is directed" *(Julian v American Business Consultants,* 2 NY2d 1, 23 [FULD, J., dissenting]). Plaintiff alleges the falsity of this publication, pointing out, *inter alia,* that the $250 contribution from the said landlord was made several months prior to the indictment and that he never shared an office with such landlord.

Viewing the flyer against the cardinal principles in the law of libel delineated above, we conclude that there is a reasonable basis for drawing the defamatory conclusion that plaintiff knowingly took money from an indicted landlord and shared an office with such landlord. If the publication is "reasonably susceptible of a defamatory connotation, then 'it becomes the jury's function to say whether that was the sense in which the words were likely to be understood by the ordinary and average reader.'" *(James v Gannett Co.,* 40 NY2d 415, 419.) Accusing an elected official of taking campaign contributions from an

indicted landlord with whom he shares an office tends to expose that official to public contempt and disgrace and impugns his integrity (see *Rinaldi v Holt, Rinehart & Winston,* 42 NY2d 369; *Nichols v Village Voice,* 57 AD2d 527 [1st Dept]). We are not concerned here with the expression of opinion whether false or not, but with an assertion of corruption impugning the integrity of an elected official. Under these circumstances there may be a recovery if actual malice is shown *(Rinaldi v Holt, Rinehart & Winston, supra).*

There is an issue of fact as to the critical element of actual malice which precludes summary judgment relief on the record herein. It is noted that the flyer was distributed a mere two days before election day and this timing together with the relationship between the parties (both vying for the same public office then held by plaintiff) is relevant on the malice issue. Moreover, the salutary purpose of the *New York Times Co. v Sullivan* (376 US 254) rule — to promote uninhibited, robust, wide-open debate about public officials — would not be served by summary dismissal of the instant complaint. This is not a situation where sloppy news reporting is involved. It is one involving a genuine issue as to the probability of actual malice.

The majority's analysis of the leaflet exhibits a high degree of precision expected of and used by lawyers and Judges and in that vein I would agree with such analysis. However, reflection upon the leaflet as it would be read and understood by an ordinary member of the public to whom it is directed prompts me to depart from the majority's conclusion. Further, it does not appear to me that a fundamental misconception of the pertinent Supreme Court decisions is exhibited by the dissent. The difference between the majority and dissenting views lies in their respective conclusions about whether the publication is *reasonably* susceptible of a defamatory connotation. Surely there is no vice exhibited in a desire to uphold the integrity of the elective process and of those who partake therein as candidates for public office by fair application of the law of defamation to those individuals.

Accordingly, the order, Supreme Court, Bronx County (BLOUSTEIN, J.), entered December 10, 1980, denying de-

fendant's motion for summary judgment dismissing the complaint should be affirmed.

CARRO and FEIN, JJ., concur with SANDLER, J.; KUPFERMAN, J. P., and LUPIANO, J., dissent in separate opinions.

Order, Supreme Court, Bronx County, entered December 10, 1980, reversed, on the law, the motion granted and the complaint dismissed, without costs and without disbursements.